## SENKO *v.* LaCROSSE DREDGING CORP.

No. 62.   Argued December 12, 1956.—Decided February 25, 1957.

*George J. Moran* argued the cause for petitioner.   With him on the brief was *Stanley M. Rosenblum.*

*Stuart B. Bradley* argued the cause for respondent. With him on the brief were *Henry Driemeyer* and *Robert Broderick.*

MR. JUSTICE REED delivered the opinion of the Court.

Petitioner was employed by respondent to assist with dredging operations being conducted by respondent in a slough dug to by-pass a rocky section of the Mississippi

River. His work was that of a handyman; it included the carrying and storing of supplies, and the general maintenance of a dredge. He was injured by the explosion of a coal stove while placing signal lanterns from the dredge in a shed on the neighboring bank. He filed this suit under the Jones Act in the City Court of Granite City, Illinois, to recover damages for his injuries. The Act provides a cause of action for "any seaman who shall suffer personal injury in the course of his employment." 41 Stat. 1007, 46 U. S. C. § 688. This Court, however, has held that the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, 44 Stat. 1424, 33 U. S. C. § 901 *et seq.*, restricts the benefits of the Jones Act to "members of a crew of a vessel." *Swanson* v. *Marra Bros., Inc.*, 328 U. S. 1. To recover, therefore, petitioner had to be a member of a crew, as that term is used in the Longshoremen's Act, at the time of his injury.

The jury returned a verdict for petitioner and judgment was entered in his favor. On appeal, the Fourth District Appellate Court of the State of Illinois held that there was insufficient evidence to support the finding that petitioner was a member of a crew.[1] Accordingly, it reversed the trial court and entered judgment for respondent. *Senko* v. *LaCrosse Dredging Corp.*, 7 Ill. App. 2d 307, 129 N. E. 2d 454. The Illinois Supreme Court denied a petition for an appeal. We granted certiorari. 351 U. S. 949.

In *South Chicago Co.* v. *Bassett*, 309 U. S. 251, we said that whether or not an employee is " 'a member of a crew' turns on questions of fact" and that, if a finding on this question has evidence to support it, the finding is con-

---

[1] Although two other grounds were advanced on appeal, only this one was considered. See n. 4, *infra*. No question has been raised at any time as to whether the dredge involved here had the status of a "vessel" at the time of petitioner's injury.

clusive. *Id.*, at 257–258.[2] The sole question presented here, therefore, is whether there is an evidentiary basis for the jury's finding that petitioner was a member of a crew at the time of his injury. This finding was made under specific instructions not objected to here.

The appellate court characterized petitioner as

> "an employee whose principal duty is to load supplies on a vessel at anchor, and to perform incidental tasks of a common labor character . . . ." 7 Ill. App. 2d, at 313, 129 N. E. 2d, at 457.

They also noted that petitioner lived ashore and was not aboard except when the vessel was anchored. The court concluded that petitioner was not "naturally and primarily on board to aid in navigation" and could not "maintain an action under the Jones Act." 7 Ill. App. 2d, at 313–314, 129 N. E. 2d, at 457.

It is true that the dredge was anchored to the shore at the time of petitioner's injury and during all the time petitioner worked for respondent. It is also true that this dredge, like most dredges, was not frequently in transit. We believe, however, that there is sufficient evidence in the record for the jury to decide that petitioner was permanently attached to and employed by the dredge as a member of its crew.

Petitioner's witnesses testified that he was known as a "deckhand" among rivermen. They said that he was hired to clean and take care of the deck, splice rope, stow supplies, and, in general, to keep the dredge "in shape." This testimony indicated that substantially all of petitioner's duties were performed on or for the dredge. A normal inference is that petitioner was responsible for

---

[2] The finder of fact in the *Bassett* case was a commissioner, but that holding applies with equal force to this case in which the finder was a jury.

its seaworthiness. If the dredge leaked, for example, the jury could suppose that his job would be to repair the leak. Furthermore, a witness testified that a usual duty of one holding petitioner's job was to take soundings and clean navigation lights when the dredge was in transit. 7 Ill. App. 2d, at 310, 129 N. E. 2d, at 455–456. Here again, the jury could reasonably have believed that petitioner would have these responsibilities in the event that this dredge were moved. Whether petitioner would be a member of the dredge's crew while taking soundings during a trip is certainly a jury question. If he were a member during travel, he would not necessarily lack that status during anchorage. Even a transoceanic liner may be confined to berth for lengthy periods, and while there the ship is kept in repair by its "crew." There can be no doubt that a member of its crew would be covered by the Jones Act during this period, even though the ship was never in transit during his employment. In short, the duties of a man during a vessel's travel are relevant in determining whether he is a "member of a crew" while the vessel is anchored. Thus, the fact that this dredge was connected to the shore cannot be controlling.

The fact that petitioner's injury occurred on land is not material. Admiralty jurisdiction and the coverage of the Jones Act depends only on a finding that the injured was "an employee of the vessel, engaged in the course of his employment" at the time of his injury. *Swanson* v. *Marra Bros., Inc.,* 328 U. S. 1, 4, citing *O'Donnell* v. *Great Lakes Dredge & Dock Co.,* 318 U. S. 36.[3]

As we have said before, this Court does not normally sit to re-examine a finding of the type that was made below.

---

[3] "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 62 Stat. 496, 46 U. S. C. § 740.

We believe, however, that our decision in *South Chicago Co.* v. *Bassett, supra,* has not been fully understood. Our holding there that the determination of whether an injured person was a "member of a crew" is to be left to the finder of fact meant that juries have the same discretion they have in finding negligence or any other fact. The essence of this discretion is that a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate.

Because there was testimony introduced by petitioner tending to show that he was employed almost solely on the dredge, that his duty was primarily to maintain the dredge during its anchorage and for its future trips, and that he would have a significant navigational function when the dredge was put in transit, we hold there was sufficient evidence in the record to support the finding that petitioner was a member of the dredge's crew. Cf. *Gianfala* v. *Texas Co.,* 350 U. S. 879, reversing 222 F. 2d 382. Accordingly, we reverse the decision below.

Respondent, on its appeal from the trial court's judgment, raised two questions which the appellate court did not reach because of its disposition of the case.[4] So that these issues may be reviewed, we remand the case to that court.

*It is so ordered.*

Mr. Justice Harlan, whom Mr. Justice Frankfurter and Mr. Justice Burton join, dissenting.

In my opinion the court below properly dismissed the complaint because the evidence shows affirmatively that

---

[4] "2, the dredge was not operating in navigable waters; and 3, there was no evidence of negligence on its part and no basis to apply the doctrine of res ipsa loquitur." 7 Ill. App. 2d, at 309, 129 N. E. 2d, at 455.

petitioner was not a member of a "crew of a vessel," [1] as that term has heretofore been used by the courts, or indeed according to any commonly understood meaning of the expression. Since the passage of the Longshoremen's Act in 1927,[2] such membership has been a prerequisite to the right to sue under the Jones Act.[3] *Swanson* v. *Marra Bros.,* 328 U. S. 1.

According to past decisions, to be a "member of a crew" an individual must have some connection, more or less permanent, with a ship and a ship's company.[4] More particularly, this Court has said that he must be "naturally and primarily on board to aid in . . . navigation," as distinguished from those "serving on vessels, to be sure, but [whose] service was that of laborers, of the sort performed by longshoremen and harbor workers." Congress intended to remove from the coverage of the Jones Act "all those various sorts of longshoremen and harbor workers who were performing labor on a vessel." *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251, 260, 257.

Petitioner's relationship to this dredge met none of these requirements. He was simply an ordinary laborer,

---

[1] It is assumed that this dredge may properly be regarded as a "vessel." And, with the Court, I do not reach the question of whether the swampy land in which the dredge was operating could be deemed "navigable water," an additional factor conditioning the applicability of the Jones Act.

[2] 33 U. S. C. § 901 *et seq.*

[3] 46 U. S. C. § 688.

[4] See *Warner* v. *Goltra,* 293 U. S. 155; *South Chicago Coal & Dock Co.* v. *Bassett,* 309 U. S. 251; *Norton* v. *Warner Co.,* 321 U. S. 565; *Desper* v. *Starved Rock Ferry Co.,* 342 U. S. 187; *The Bound Brook,* 146 F. 160, 164; *The Buena Ventura,* 243 F. 797; *Seneca Washed Gravel Corp.* v. *McManigal,* 65 F. 2d 779; *De Wald* v. *Baltimore & Ohio R. Co.,* 71 F. 2d 810; *Diomede* v. *Lowe,* 87 F. 2d 296; *Moore Dry Dock Co.* v. *Pillsbury,* 100 F. 2d 245; *Wilkes* v. *Mississippi River Sand & Gravel Co.,* 202 F. 2d 383, 388.

a member of the Common Laborers' Union. Tempo-rarily unemployed, he applied to his union, which sent him to respondent as a laborer. Respondent was a contractor on the canal-digging project, and employed a construction gang on shore under the supervision of a foreman. This foreman assigned Senko to take the job of "deckhand" or "laborer" on respondent's dredge, the *James Wilkinson,* a craft which, though afloat, served as a stationary earth-removing machine. His duties there were miscellaneous, consisting of serving as assistant and handy-man to the team of men operating the earth-removing pumps. He carried supplies from shore to dredge and back, cleaned up the dredge, filled the water cooler, and did errands on shore. He worked an eight-hour shift, was paid by the hour, and received premium pay for overtime. He lived at home, drove to work every day, and brought his own meals. He did not belong to the National Maritime Union or any other seamen's organization. He was subject to the discipline and supervision not of officers of a vessel but of the labor fore-man in charge of the construction project, who worked on shore. At any time Senko could have been shifted to a job on shore by the foreman and replaced with one of the shore laborers; in other words, his *connection* was not with the vessel but with the construction gang. He had no duties connected with navigation; in fact he had never been on the dredge when it was pushed from one location to another, and never even saw it moved.

There is nothing in the record to indicate that peti-tioner was responsible for the seaworthiness of the dredge, or that he ever performed or was qualified to perform any duties of that type. True, he cleaned lights, but these were not "navigation" lights, as the dredge did not carry the latter except when under tow. In effect he cleaned lanterns and placed them when the construction work continued at night. Again, he took "soundings," but in

spite of the maritime flavor of the phrase, the facts permit no salty inference, since the soundings were taken not in aid of navigation (the dredge being completely stationary at such times), but only to measure the amount of silt pumped from the canal. All this means is that Senko occasionally measured the work-progress on an earth-removal project, a task about as nautical as measuring the depth of a natural swimming pool under construction in marshy ground.

I do not think that these facts permit a finding that petitioner was a "member of a crew," more or less permanently connected with a ship's company and on board "naturally and primarily" in aid of navigation. His nexus was not with a ship's company but with a construction crew on shore. He signed no papers to join the vessel and his employment was governed by no "articles"; he was merely assigned by the Laborers' Union "pusher" to this particular task on an earth-removing project. His boss was not a ship's officer but a construction superintendent whose office was on land. In fact the record is bare of any of the things which common sense demands of a "ship's company." There was no captain, no master, no mate, no ship's papers or ship's discipline, no log, no galley, no watches to stand. And to say that Senko's job was naturally and primarily in aid of navigation can be done, it seems to me, only at the cost of removing from those words all semblance of content. Not only did Senko have nothing to do with navigation, but he did not "aid" navigation in the sense of helping to maintain the vessel or its crew in a condition to navigate.[5] He was

---

[5] I do not, of course, contend that men such as ship's cooks cannot be members of a crew merely because their actual jobs have nothing to do with making the vessel move. The vital distinction is that such men do contribute to the functioning of the vessel *as a vessel*—as a means of transport on water. Not so Senko, whose duties had absolutely nothing to do with the dredge in its aspects *as a vessel*.

simply a handy-man and assistant for a crew of men operating an earth-removing machine which happened to be afloat and which, occasionally and always in Senko's absence, was pushed from place to place.

The fact that it was a jury that found Senko to be "a member of a crew" does not relieve us of the responsibility for seeing to it that what is in effect a jurisdictional requirement of the Jones Act is obeyed. This Court has more than once reviewed similar determinations of other fact-finding bodies, and set them aside when satisfied that they did not meet the requirements of the Jones Act or Longshoremen's Act. *Cantey* v. *McLain Line, Inc.,* 312 U. S. 667; *Norton* v. *Warner Co.,* 321 U. S. 565; *Desper* v. *Starved Rock Ferry Co.,* 342 U. S. 187. The reason is, of course, as the Court said in the *Norton* case, *supra,* that "where Congress has provided that those basic rights [conferred by the Jones Act] shall not be withheld from a class or classes of maritime employees it is our duty on judicial review to respect the command and not permit the exemption [arising from the Longshoremen's Act] to be narrowed whether by administrative construction or otherwise." 321 U. S., at 571.[6] I cannot see why this same sound reasoning should not apply in reverse, that is, where Congress has provided that a right *shall* be withheld from a certain class, and where that class has been narrowed by the "construction" of some fact-finding body. Nor, I submit, should it make any difference that such a body is a jury.[7] A jury's verdict

---

[6] It is worth noting that in *Norton,* where the Court reversed a determination by a Commissioner that a bargeman in general charge of a barge was not a member of a crew, all of the factors on which the Court relied are conspicuously absent here.

[7] Certainly *South Chicago Coal & Dock Co.* v. *Bassett, supra,* upon which the Court relies, does not suggest that a jury's verdict on this issue is to be accorded some special sanctity. That case simply held that a District Court could not grant a trial *de novo* on an issue

casts no such spell as should lead the Court to permit it to rob this restriction of the Jones Act of meaningful significance. This, in my opinion, is what today's decision permits.[8]

I would affirm the decision of the court below. This would not leave petitioner without a remedy. He has already applied for and secured workmen's compensation under the Illinois Workmen's Compensation Act. This is the relief which Congress intended him to have, and I would not add to it another remedy denied by Congress.

---

within the primary jurisdiction of the Administrator, under the Longshoremen's Act. There is no comparable fact-finding procedure under the Jones Act. Moreover, despite the fact that the Longshoremen's Act gave the Administrator "full power and authority to hear and determine all questions in respect of" claims under the Act, this Court did in fact examine the Administrator's determination that the plaintiff there was not a member of a crew, and sustained it only after concluding that it was supported by the evidence. Further, the Court's citation of *Bassett* in *Cantey* v. *McLain Line, Inc., supra,* would seem in context to imply that the Court regarded the result in *Bassett* as reflecting its own independent determination as to the status of the petitioner there, rather than as a decision passing merely on the scope of judicial review to be accorded to the determination of the Administrator. And, if that be so, *Bassett* should surely control the result here, since if the *Bassett* petitioner was as a matter of law not a "member of a crew," *a fortiori,* Senko was not.

[8] *Gianfala* v. *Texas Co.,* 350 U. S. 879, should not be regarded as an obstacle to reaching what, in my view, is plainly the right result here. The petitioner in *Gianfala* at least played a part in the operation of moving the barge, and thus arguably was performing a function "in aid of" navigation. Moreover, the *per curiam* order in *Gianfala,* entered solely on the basis of the petition for certiorari, without the benefit of an opposing brief or oral argument, can scarcely be regarded as a precedent of much significance.