Rudolph E. HILL, Plaintiff,

v.

B. F. DIAMOND, trading as Diamond Construction Company, Defendant.

John Gene HODGES, Plaintiff,

v.

B. F. DIAMOND, trading as Diamond Construction Company, Defendant.

Nos. 3712, 3753.

United States District Court
E. D. Virginia,
Norfolk Division.

April 17, 1962.

Bangel, Bangel & Bangel, L. David Lindauer, Portsmouth, Va., for plaintiffs.

Seawell, McCoy, Winston & Dalton, John W. Winston and Charles R. Dalton, Jr., Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

Motions for summary judgment having been filed by the defendants and the issues being identical in each case, the uncontroverted facts are that Diamond Construction Company, hereinafter referred to as "Diamond" is the prime contractor for the construction of a vehicular tunnel to be laid on the bottom of the Elizabeth River connecting the cities of Norfolk and Portsmouth. When completed, the tunnel will consist of twelve sections or "tubes". Each tube is separately prepared for sinking to the river bottom and, when one tube is completed, another is towed from its construction site in Maryland and processed for its ultimate resting place.

The tubes, constructed at Port Deposit, Maryland, are sealed cylinders approximately 300 feet in length with a diameter of 37 feet. Before leaving Maryland for towage to the construction site, the cylinders are poured with approximately 800 yards of keel cement to prevent gyrating or spinning while the tube is in tow. The tug crew handles all attached lines and, while being towed, no person is aboard the tube. Upon arrival at Pinners Point, Portsmouth, the tube is secured to a pier and is thereafter fully prepared for sinking into the trench at the bottom of the river. In the course of preparation at the pier site the interior wall of the tube is covered with cement and certain electrical fixtures are installed. A network of steel rods is welded to the entire internal wall so as to form a framework upon which the cement can be poured. The time required for preparing a tube for use prior to sinking is approximately three months, but this includes the necessary work of pouring cement on the outside of the tube which is done after all internal work has been completed and the tube is again sealed.

The tube is afloat at all times prior to being placed into its permanent location on the river bottom. Access to the tube is through a series of holes cut into the top of the cylinder, with ascent and descent by ladders. Shoreside power sources provide air-tool tubing and electricity, with access through the holes in the cylinder.

No persons sleep aboard the tube. All workers maintain residences ashore. Employees work a regular five-day week, on an hourly basis plus overtime. The regular work hours are from 8 A.M. to 5 P.M. No employee working in the tube is known to have seaman's papers. The workers bring their lunch and eat at the job site. Some remain within the tube while eating, but the majority come out. No kitchen or eating facilities are made available.

These plaintiffs, employees of Diamond, were injured while doing construction work on the interior of the first tube brought to the pier. With the exception of certain employees of an electrical sub-contractor, all other workers were employed by Diamond. The plaintiff, Hodges, sustained his injury on September 13, 1960, while welding light brackets onto the interior wall of the tube. His contention is that Diamond's failure to provide safety belts constituted unseaworthiness and negligence. The plaintiff, Hill, was a rodman and, on September 23, 1960, he was injured when he slipped on some grease. He likewise urges unseaworthiness and negligence as the basis for his action.

The pertinent inquiry is the status of the tube. Was it a vessel? If so, were the plaintiffs seamen entitled to maintain an action under the Jones Act, 46 U.S.C.A. § 688?

■ Admittedly summary judgment can only be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56 (c), Federal Rules of Civil Procedure, 28 U.S.C.A. We think, however, that this case falls squarely within the rule.

■ We are not unmindful of the trend of recent decisions permitting the jury to factually determine whether a man is a seaman or whether a vessel is engaged in navigation. Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737; Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; Butler v. Whiteman, 356 U.S. 271; Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed. 2d 1. Facts for the purpose of determining legal definitions are frequently in dispute. If conflicting inferences may lead to different conclusions among reasonable men, the issue is one of fact for jury determination, but if no reasonable conclusion may be drawn as to whether the claimant was a seaman and a member of the crew of a vessel, the issue is one of law. Offshore Company v. Robison, 5 Cir., 266 F.2d 769, 779, 780.

■ Counsel agree upon the basic criteria for determining whether a claimant is a seaman in that (1) the structure must be engaged in navigation, (2) there must be a more or less permanent connection with the vessel, and (3) the worker must be aboard primarily to aid in navigation. Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991; McKie v. Diamont Marine Co., 5 Cir., 204 F.2d 132.

From the Senko, Grimes [1] and Butler cases a more or less definite pattern is established. In each case the party injured was on or near a "vessel", and the main problem was the claimant's relationship to the "vessel".

■ Even if we were to assume that the tunnel tube was a "vessel", it does not follow that it was engaged in naviga-

tion. It may have been "in navigation" while in tow from Maryland to Virginia, but upon arrival at the pier it was removed from navigation with its only movement thereafter contemplated being to place it in position for sinking to the river bottom. We believe that, since the facts are not in dispute, the cases of Desper v. Starved Rock Ferry Co., 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205, and Roper v. United States, supra, are controlling. Although the tunnel tube remained afloat, it had ceased to be in navigation (assuming arguendo that it at one time occupied that status) with even more force than in Desper and Roper.

Nor can it be successfully argued that these plaintiffs were aboard the tube primarily in aid of navigation. The same reasoning applies. If the tube was not a "vessel", there was nothing to aid by way of navigation.

■ While unnecessary to so hold, it is extremely doubtful that these plaintiffs had a more or less permanent connection with the structure which plaintiffs refer to as a "vessel". In Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 276 F.2d 42, a welder temporarily aboard a barge was held not to be a seaman under the Jones Act. As the court said (276 F.2d 46):

"Here the decedent fails on many scores. He was a regular shore worker. He lived, ate and slept at home. He was not attached or assigned to any particular vessel either as a member of a crew or otherwise. His customary duties were in welding and cutting on vessels under construction, conversion or outfitting. His relation to the barge * * was purely transitory—both in point of work to be done and the time of its duration."

Certainly it is true that if a welder temporarily aboard a barge—admittedly a vessel under the Jones Act—is not a seaman, it follows that a welder aboard a non-transportation type structure such

---

1. The Texas Tower, referred to in Grimes, has recently been held *not* to be a "vessel" under a limitation of liability proceeding.

In re United States, D.C., 203 F.Supp. 215.

as a tunnel tube cannot be considered as a seaman with more or less permanent connection to the structure.

From any and all reasonable conclusions to be drawn from the uncontroverted facts there can be but one answer. Unless the issues of "seaman" and "vessel" are to be withdrawn from the purview of summary judgment in all cases—a contention which has no support in law—the motions for summary judgment must be sustained. It is a mistaken belief of many that merely because the status of *who* is a seaman may be a question of fact, it automatically follows that every case is one of fact for jury decision. Thibodeaux v. J. Ray McDermott & Co., supra, at p. 46, of 276 F.2d.

Present orders.