# 𝔖taunton

TIDEWATER CONSTRUCTION CORPORATION, RAYMOND INTERNATIONAL, INC., AND PETER KIEWIT SONS' CO., INDIVIDUALLY AND AS JOINT VENTURERS TRADING AS TIDEWATER-RAYMOND-KIEWIT V. EDWARD E. DUKE.

September 5, 1969.

Record No. 6976.

Present, All the Justices.

*Roy L. Sykes* (*Jett, Sykes & Berkley*, on brief), for plaintiff in error.

*Henry E. Howell, Jr.; Stanley G. Barr, Jr.* (*Howell, Anninos & Daugherty; Moody, Mattox, Young & West*, on brief), for defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Edward E. Duke, brought this action against Tidewater Construction Corporation, Raymond International, Inc., and Peter Kiewit Sons' Co., joint venturers trading as Tidewater-Raymond-Kiewit, defendants, for damages for injuries received while aboard a barge owned by the defendants, by whom he was then employed. On trial to a jury he recovered a verdict for $95,000.00, on which the court entered judgment and defendants were granted a writ of error.

On their assignments of error the defendants say the court erred in refusing to pass on their plea in bar, in admitting a deposition into evidence, in granting plaintiff's instruction No. 1, in refusing their instructions M and N, and in refusing to set aside the verdict as being contrary to the law and the evidence.

As plaintiff states in his motion for judgment and in his brief, his action was brought under the "Jones Act," 46 U.S.C.A., § 688, which provides, so far as here applicable, as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law

right or remedy in cases of personal injury to railway employees shall apply; * *." [1]

The issue presented is, therefore, whether the plaintiff was a seaman within the meaning of the Jones Act. The cases dealing with the question are legion. "They turn on individual fact situations; no single factor is controlling, but the whole context must be considered." Annotation, 75 A.L.R.2d at 1314.

The vessel on which the plaintiff was working at the time of his injury was an ocean-going barge approximately one hundred feet long and fifty feet wide, known as the Big D. It was designed for offshore marine construction, such as light towers. At each of its four corners was a spud or leg, operated by compressed air so that at a construction site the spuds could be lowered to the ocean floor and then by means of compressed air the barge could be raised to the desired height above the surface of the water to serve as a stationary platform for the men engaged in the construction job.

The job at hand was the construction of the Diamond Shoals Light Station, off Manteo, North Carolina. This was to be the third joint venture of the defendants. They had previously constructed the Chesapeake Bay Bridge-Tunnel and thereafter the Chesapeake Off Shore Light Station.

The plaintiff first went to work for the defendants about March 1, 1965, when they were preparing the Big D for service in constructing the Chesapeake Light Station about thirteen miles offshore from Virginia Beach. During that construction plaintiff worked as a mechanic, looking after the air compressor, jacks and other machinery.

Plaintiff introduced a cardboard model of the Big D which he had made and explained to the jury the structure of the barge and some of its equipment, pointing out its four generator units which supplied the air for operating the spuds and grippers on the vessel. The barge was not self-propelled but was towed to the work site where it was to be used. It carried four anchors for use to hold the barge in place at the work site and these anchors were operated by the workmen on the barge. It was arranged so that its crew could eat and sleep on it.

During his employment on the barge at the Chesapeake Tower, the plaintiff was told that his work was satisfactory and that he would be employed on the next job, which was the construction of the Dia-

[1] 45 U.S.C.A., § 51 *et seq.* Section 56 of said Title 45 provides that the jurisdiction. of the courts of the United States under this chapter (ch. 2) "shall be concurrent with that of the courts of the several States."

mond Shoals Light Tower. The defendants had contracted in or before December 1964 to do that work and expected to use the Big D on the job. The Chesapeake Tower job was completed in July 1965 and plaintiff was then assigned to another job at Yorktown. He was then told, he said, that when the Yorktown work was finished "we" would come back and make the Big D ready for sailing.

On March 14, 1966, plaintiff resumed his employment by the defendants and began helping to get the Big D ready for the Diamond Shoals job. The Big D was then afloat in the Elizabeth River, secured by lines running from the stern, from the bow and from the center. It was boarded by means of a gangplank.

The plaintiff testified that the crew then on the Big D was practically the same as had been on the Chesapeake Tower job. They were, he said, a fireman, an "operator," the deck crew men called the riggers, who were also the pile driving men, and a Mr. Warren. Plaintiff was hired as a mechanic and his work was maintaining the equipment on the deck of the barge. Their purpose was to put the barge in order for the work ahead at Diamond Shoals.

When the Chesapeake job was completed, parts of the equipment of the barge were taken off and stored for protection and preservation. The master mechanic, under whom the plaintiff worked, said the vessel was 'winterized" for the winter. On March 14, 1966, defendants began to prepare the Big D for the Diamond Shoals job, which was due to be completed on May 1, 1966. This preparation required a lengthening of the spuds, certain electrical work and a general overhauling of the equipment. This work required about six weeks and was within a week of being completed when plaintiff suffered his injuries.

When plaintiff came aboard on Saturday, the day of the accident, the spuds were ready to be set in position and at the time of his injuries all four had been set. On that morning he had been told they were ready for him to hook up the jacks so the air could be applied to the grips and the equipment tested over the weekend to make the vessel ready for sailing. The cook had come aboard and supplies were being brought on the barge.

At the time of the accident the plaintiff was engaged in hooking up the fourth spud when he slipped and fell on grease which had been allowed to accumulate on the deck where he was required to work. In falling he knocked open a high pressure air valve which released high pressure air through the hose he was holding, causing him to

lose control of the hose. It whipped around uncontrolled on the deck and struck the plaintiff, resulting in a severe fracture of his leg. He has been able to work only occasionally since.

Under their assignments of error the defendants contend, first, that the court erred in "failing to pass on" their plea in bar as a separate issue prior to submitting the case to the jury on its merits. This plea alleged that the court had no jurisdiction of the subject matter because the barge on which the plaintiff was working when he was hurt was out of service; that plaintiff was not a member of the crew; that he was not a seaman; that he was not entitled to any warranty of seaworthiness, and that his exclusive remedy was under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A., § 901 *et seq.*)

After consideration the court entered an order which stated that substantially all of the evidence necessary to a trial on the merits of the case was necessary to the determination of the status of the plaintiff and of the vessel, and that these issues could be determined by the court and jury at one trial without burdening the parties and the court with two trials. Consequently, it was ordered that the defendants file their answer and that the cause of action on the merits be consolidated for trial with defendants' special plea.

The several hundred pages of testimony taken on these questions and the outcome of the case demonstrate the propriety of this holding and distinguish this case from *Lucas* v. *Biller*, 204 Va. 309, 130 S.E.2d 582, cited by the defendants. There was no error in the procedure complained of.

Defendants next assert that the court erred in permitting the deposition of Bruce Filmore Hale to be admitted into evidence and read to the jury, on the grounds that it was not properly filed as required by § 8-314 of the Code of Virginia, and that it was not shown that the witness was out of the State as required by § 8-313.

When the deposition was offered, defendants objected only on the ground that it had not been filed as required by statute. The statute, § 8-314, provides that it shall be certified and returned by the officer taking it, or sealed and sent to the clerk of the court or to the person before whom it is to be read. The court ruled that the deposition would not be received as offered, but that if "the reporter" presented it to the court with the averment that it was correct, it would be accepted. Apparently this was done and no further objection was made by the defendants to the reading of the deposition. The objec-

tion now made that it was not proved that the witness was out of the State comes too late. It may be added, however, that one of plaintiff's attorneys made an explanation which satisfied the court on that point. It was not error to allow the deposition to be read to the jury.

■■ Defendants next assert that the court erred in giving plaintiff's instruction 1.[2] Their objection relates only to the second paragraph of the instruction. The printed record shows no objection or exception taken to the giving of this instruction. We find, however, in the manuscript record the statement that the defendants note their exception to Paragraph 2 of the instruction, and the statement that the "defendants do not believe that the factors as so defined are in accord with those established by the Supreme Court in West versus U. S., 1959, 361 U.S. 118," and the further statement that "the factors stated for consideration by the Jury are more detailed than those given by the Supreme Court in West versus U. S." Such an exception does not comply with Rule 1:8 of Rules of Court. See *Harlow* v. *Commonwealth*, 195 Va. 269, 273, 77 S.E.2d 851, 854. Moreover, *West* v. *U. S.* was not an action under the Jones Act. It involved a libel under § 781 of Title 46 of U.S.C.A. relating to a "Liberty" ship which had been in the "moth-ball fleet" at Norfolk "in total deactivation" for several years. 361 U.S. 118, 80 S.Ct. 189, on appeal from 256 F.2d 671. It suggested no error in the giving of instruction 1 and the giving of that instruction involved no reversible error.

■■ Defendants assert that the trial court erred in refusing to give their instruction M[3] and N[4]. Again we do not find in the printed

---

[2] "INSTRUCTION NO. 1

"The Court instructs the jury that the plaintiff, Edward E. Duke, brought this suit under the Jones Act, which is an Act affording a recovery for personal injuries to seamen of various types of vessels that are in navigation at the time of the injury. For the purposes of these instructions the terms 'seamen' and 'members of the crew' are used interchangeably.

"To be in navigation within the meaning of the Jones Act, the vessel need not be on station and carrying out the function for which it is designed. You may consider the character of the work being performed aboard the vessel, the presence of the crew performing the customary work of the vessel, the measure of control by the owner over the vessel as a whole, her stage of readiness for carrying out the function that the vessel was designed for.

"The Court further instructs you that if you find that the 'BIG D' was not in navigation at the time of the plaintiff's injuries, then your deliberations are at an end and you shall find for the defendant[s], but if you find that the barge 'BIG D' was in navigation, then you shall consider the further instructions the Court now makes to you."

[3] "INSTRUCTION NO. M

"The Court instructs the jury that even if you believe from the evidence that the

record that any objection was made or exception taken to the refusal of these instructions. We look to the manuscript record to find that defendants "noted their exception" to refusing instruction M on the ground that it was in accord with *Desper* v. *Starved Rock Ferry Co.*, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205, and *Antus* v. *Interocean Steamship Co.*, (C.C.A. 6), 108 F.2d 185.

In *Desper* the plaintiff when injured was on board a moored barge and engaged in painting life preservers for use on sightseeing boats which were then blocked up on land. The court in its opinion said that whether an individual was a seaman depended on the facts of the particular case and the "facts in this case are unique." Desper, the court said, was only a probable navigator and the law covered only seamen in being.

In the present case plaintiff was on board a vessel afloat, almost ready for its voyage to the work site and plaintiff was engaged in fitting it for its designated task.

In *Antus, supra,* the vessel "had been withdrawn from navigation". The work being done was not even preparatory to navigation, but consisted of "preparing the vessel for winter quarters."

The present case is clearly distinguishable from *Desper* and *Antus* on its facts.

In the more recent case of *Butler* v. *George W. Whiteman,* 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754, a barge was moored to the wharf and a tug was lashed to the barge. Decedent had been engaged in cleaning the boiler of the tug and met his death by drowning under circumstances not clearly shown. He was last seen alive while running across the barge to the tug. The lower courts dismissed the action for his death under the Jones Act. In a *per curiam* opinion the Supreme

---

plaintiff was employed on the BIG D during the construction of the Chesapeake Light Tower and even if you further believe that it was contemplated that he would also be employed on the BIG D during the construction of the Diamond Shoals Light Tower, this does not constitute him a seaman or a member of the crew thereof if you further believe that at the time of plaintiff's accident the BIG D was out of service and that at said time he was engaged in preparing the BIG D for return to service."

4 "INSTRUCTION NO. N

"The Court instructs the jury that if you believe from the evidence that the BIG D was laid up and out of service for a period of approximately eight (8) months prior to plaintiff's accident, and was in the process of being thoroughly rehabilitated for return to service at the time thereof, then the BIG D had no crew, and under such circumstances you should find that the plaintiff was not a seaman or a member of the crew thereof."

Court reversed, holding that the evidence presented a jury question as to whether the tug was in navigation.

Instruction N would have told the jury that under the circumstances therein stated, which in themselves were at least of questionable accuracy, the plaintiff was as a matter of law not a seaman or a member of the crew. Under *Butler* these were jury questions.

We find no error in the refusal of instructions M and N.

 The defendants assert finally that the court erred in refusing to set aside the verdict as being contrary to the law and the evidence. They say in their brief that the paramount question is whether the plaintiff was a seaman entitled to sue under the Jones Act.

In the case of *Offshore Company* v. *Robison*, 5 Cir., 266 F.2d 769, 75 A.L.R.2d 1296, in an instructive opinion by Judge Wisdom, it was said:

> " * * * The Act has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable waters. * * * " 266 F.2d at 771, 75 A.L.R.2d at 1301.

Offshore Company was in the business of drilling and exploring for oil and gas. It owned and operated a drilling rig mounted on a barge with retractable legs or spuds, and operated in a fashion similar to that of the Big D. It was "strictly a drilling platform." At the time of the accident "it was resting firmly on the bottom of the Gulf of Mexico". Robison was an oil field worker. When the accident happened he was working on the main deck of the barge as a driller's helper. He had never worked as a "seaman" on board a "vessel" as those terms are ordinarily understood. He was injured when a casing fell and broke his leg. He sued the company on the ground that he was a seaman and member of the crew. His case was heard before a jury as an action under the Jones Act and the general maritime law. He recovered a verdict and judgment which were affirmed by the Court of Appeals, 5 Cir. Said the Court: "Whatever may have been the original intention of Congress, courts have given an extremely liberal interpretation to the terms 'seaman' and 'member of a crew of any vessel' without provoking any congressional amendments restricting the coverage of the act." 266 F.2d at 774, 75 A.L.R.2d at 1304.

After pointing out that the Supreme Court had held that the effect of the Longshoremen's and Harbor Workers' Compensation Act was to restrict the benefits of the Jones Act to " 'members of a crew of a vessel,' " the Court said:

"Gianfala v. Texas Company, 1955, 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775, reversing Texas Company v. Gianfala, 5 Cir., 1955, 222 F.2d 382, is the key case in the conversion of offshore oil field workers into seamen. * *" 266 F.2d at 774, 75 A.L.R.2d at 1304.

In that case, said the Court, the defendant contended that the drilling barge was not a vessel in navigation and that the decedent was an oil field employee whose duties were not primarily in aid of navigation; but the trial court held that his status was a question for the jury. The Fifth Circuit Court reversed, holding that decedent was not aboard primarily to aid in navigation and not as a member of the ship's crew, but as a member of the drilling crew. But the Supreme Court reversed and in a *per curiam* opinion, and without discussing the law but citing four cases, ordered that the judgment be reinstated.

In the four cases, all decided for the plaintiffs, one of the plaintiffs was a member of a drilling crew on a submersible drilling barge, one a foreman on a derrick, one a common laborer on a dredge, and the fourth a deck hand on a dredge.

The *Offshore* opinion also discussed the case of *Senko* v. *Lacrosse Dredging Corporation*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404. Senco was a handyman on a dredge which was anchored to the shore and used as a stationary earth-moving machine. He ran errands on shore, was paid by the hour, lived at home and brought his own meals to work. He had no duties connected with moving the dredge. He was injured ashore while placing a signal lantern from the dredge in a shed on the neighboring bank. He brought suit under the Jones Act and a jury returned a verdict in his favor, but the trial court set it aside on the ground that the evidence was not sufficient to show that he was a member of the crew. The Supreme Court reversed and in its opinion stated that " 'a jury's decision is final if it has a reasonable basis, whether or not the appellate court agrees with the jury's estimate.' " 266 F.2d at 777, 75 A.L.R.2d at 1307.

After reviewing the Supreme Court decisions, the Court in *Offshore* concluded:

" * * there is an evidentiary basis for a Jones Act case to go

to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." 266 F.2d at 779, 75 A.L.R.2d at 1309.

In the present case, Duke was a member of a crew engaged in putting the barge in condition to be floated to the site in the ocean where it would be used in the construction of the Diamond Shoals Light Tower. This work was being done while the barge was afloat in the Elizabeth River, where there were large tugs, oil tanks, yachts and other vessels afloat, and had proceeded nearly to completion when the accident occurred. At that time all four of the spuds had been set in position. On Saturday morning when the plaintiff came aboard he was told that the spuds were ready for him to hook up the jacks so the air could be applied to the grippers, and the equipment be tested over the weekend to see that it was ready for sailing. The cook had come aboard and supplies were being brought aboard. In the week following, the barge was floated to the work site and the work of constructing the light tower was begun.

We hold that under the facts as the jury could have determined them to be from the evidence, and considered in the light of the Supreme Court decisions, the plaintiff came under the protection of the Jones Act and the judgment appealed from is accordingly

*Affirmed.*