Anna Ingegerd **HOLLAND,** as surviving spouse and personal representative of Robert Lisle Holland also known as Robert Lyle Holland, Deceased, Plaintiff,

v.

**HEALY TIBBITTS CONSTRUCTION CO.,** a corporation, et al., Defendants.

Civ. No. 73-3851.

United States District Court, D. Hawaii.

July 24, 1974.

T. Irving Chang, Honolulu, Hawaii, Frederick R. Duda, Oakland, Cal., for plaintiff.

David J. Dezzani, Goodsill, Anderson & Quinn, Honolulu, Hawaii, for defendants.

## DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PENCE, Chief Judge.

Robert Holland, deceased husband of the plaintiff, was a professional hardhat diver of over 20 years experience. Some few days before his death he was employed by the defendant, Healy Tibbitts Construction Co. (Tibbitts), as one of the three divers working off Tibbitts' barge floating a short distance offshore from Hilo Harbor.

Tibbitts had a contract to repair the underwater sewer outfall of Hilo. Barge No. 43, without motor power and moved only by tug, was anchored close offshore, along the line of the sewer pipe. It carried the pipe and had a crane for the purpose of slinging and moving the pipe as necessary to repair the sewer.

Barge No. 43 had a full complement of deckhands and job superintendents to handle the barge and the pipe. Holland and the two other divers did not live on board, did no other work in connection with the operation of the barge or its purpose, save and except to dive in order to accomplish the specific job of placing pipe for a sewer outfall, inspect and supervise the placing of pipe for the underwater sewer outfall repair, and to check the air compressor and other diving equipment. Holland was paid overtime for such work and, if not a "sea-

man", was covered under the Longshoremen's and Harbor Workers' Compensation insurance policy carried by Tibbitts.

On August 10, 1972, Holland went overboard, wearing full hardhat-type equipment, into about 35 feet of water. While engaged in this dive, something —just what, this court does not at this time determine—happened and Holland died.

Apart from the above, almost the only point of agreement between the parties is that the plaintiff is the widow of the deceased.

Holland's widow has brought suit under the Jones Act, claiming that Holland was a seaman and that his death was caused by the negligence of the defendant as well as the unseaworthiness of the vessel. Plaintiff has moved for summary judgment on several points. Those now here for decision are whether or not Holland was a seaman within the meaning of the Jones Act at the time of his death, whether the defendant was negligent in the operation of its barge, and, if negligent, if that negligence was the proximate cause of Holland's death.

## JURISDICTION

This court, on the pleadings, has jurisdiction over plaintiff's claim under the Jones Act and under general maritime law.

## LONGSHOREMEN'S AND HARBOR WORKERS' COMPENSATION ACT

Defendant nevertheless challenges jurisdiction upon the predication that plaintiff, as the widow, has a claim under Longshoremen's and Harbor Workers' Compensation Act and under the 1972 amendment[1] thereof. A worker covered thereby may not sue his own employer for unseaworthiness of the employer's vessel.

■ Of course, whatever rights the widow may have had under the Act at the time of Holland's death were fixed

thereby. The 1972 amendment may possibly have enlarged those rights, but it does not by any of its terms automatically and precisely confine Holland's widow within its coverage. None of the sections of the Act *conclusively* eliminate the possibility that Holland was in fact a seaman, and not entitled to the benefits of the Act.

## LEGAL ANALYSIS

■ Thus the question of whether or not Holland was a seaman is the hard nut primarily submitted to this court for cracking. Until the Supreme Court stated otherwise in Senko v. La Crosse Dredging Corp., 352 U.S. 370, 375, 77 S. Ct. 415, 418, 1 L.Ed.2d 404 (1957), as the dissent therein pointed out:

> "[T]o be a 'member of a crew' an individual must have some connection, more or less permanent, with a ship and a ship's company . . . . [And] he must be 'naturally and primarily on board to aid in . . . navigation,' as distinguished from those 'serving on vessels, to be sure, but [whose] service was that of laborers, of the sort performed by longshoremen and harbor workers.'" (Citation omitted.)

Senko was just an ordinary laborer, assigned as a deckhand or laborer on a dredge in a canal digging project. His duties were miscellaneous. He carried supplies from shore to dredge, cleaned up the dredge, did errands on shore, etc. He lived at home and brought his own meals. He was "subject to the discipline and supervision not of officers of a vessel but of the labor foreman in charge of the construction project, who worked on shore. . . . [H]is *connection* was not with the vessel but with the construction gang. He had no duties connected with navigation"; in fact he had never even seen the dredge moved. (Emphasis in original.) *Id.*, at 375–376, 77 S.Ct. at 419.

1. 33 U.S.C. § 905.

Similar to Senko in that case, Holland's nexus here was not with a ship's company but with an underwater sewer repair job. He signed no papers to join the vessel, his employment was governed by no articles, his job was as a hardhat diver, he had nothing to do with the navigation of the vessel, nor did he do anything to maintain its condition of seaworthiness. Nevertheless, in Senko The Court held that the determination of Senko's status was for the trier of facts to make.

Likewise in Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958), where Grimes, a member of the Pile Drivers Union, was employed by the defendant as a pile driver on defendant's contract to construct a "Texas Tower" at sea. After the tower had been placed in its permanent position, Grimes and others were sent to a barge which was used solely to transport construction materials to prepare for the transfer of the materials to the tower. They had worked on the barge preparing the materials for about six hours and then, while on a Navy life ring used to transfer him from the tug which had taken him from the tower to the barge, Grimes was killed when the life ring collided with the pilothouse on the tug. Again The Court held that such evidence presented an evidentiary problem for the trier of the fact as to whether or not Grimes was a seaman.

Plaintiff insists, nevertheless, that there is no question but that Holland was a seaman as a matter of law, inasmuch as (a) he "performed various activities as a deckhand on Barge No. 42,[2] (b) Barge No. 43 was a special purpose vessel, in navigation, its special purpose being to prepare, lower to the sea bottom and install sections of concrete pipe, and (c) "Holland's activities were absolutely essential in carrying out the special purpose . . . or function of Barge 43."[3]

Plaintiff maintains that Holland has thus met the three-fold test for seaman status under Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959) and Producers Drilling Co. v. Gray, 361 F.2d 432, 434 (5th Cir. 1966). A close study of the facts of each case analyzed in Offshore, and of Offshore and Producers Drilling themselves, does but prove the soundness of the observation of Judge Mahoney in Gahagan Construction Corp. v. Armao, 165 F.2d 301 (1st Cir. 1948), viz., "each case presents a different situation" and "no single factor is controlling." The legal concept of a "seaman" has now become so diffused and intangible that, as indicated, supra, even The Court cannot give a finite meaning to the term.

This court does not interpret either Offshore or Producers Drilling to mandate the result plaintiff claims. This court's distillation of Judge Wisdom's erudite and comprehensive "squeezings" of the applicable law, in Offshore, when coupled with The Court's opinions in Senko and Grimes, rather mandate submitting Holland's claims to a jury. While this court feels, along with Justices Harlan and Whittaker in Grimes, that "unless a 'seaman' is to mean nothing more than a person injured while working at sea", then neither Senko nor Grimes (nor Offshore or Producers Drilling) can be, rationally, correct. Being bound, nevertheless, by The Court, this court holds that the facts in this case do not warrant a summary judgment as to the employment status of Holland at the time of his death, but that those facts do present a problem for decision by the trier of the fact. Plaintiff's motion for summary judgment on the issue of whether or no Holland was a seaman is DENIED.

A review of the memoranda and supporting evidence of plaintiff and defendants on plaintiff's motions for summary judgment on negligence and proximate cause leaves this court convinced that

2. Plaintiff's Reply Memorandum, May 10, 1974.

3. Ibid.

there are unquestionably presented questions of fact for the trier.  Plaintiff's motion for summary judgment thereon is, likewise, denied.