### Harold L. BOHLINGER, Plaintiff,

### v.

### ALLIED TANKSHIPS, INC., Allied Marine Industries, Inc., Atlantic Company Limited Partnership, and Allied Repair Service, Inc., Defendants.

### Civ. A. No. 84–427–N.

United States District Court, E.D. Virginia, Norfolk Division.

July 1, 1985.

Marlene Woodall, Virginia Beach, Va., Michael J. Pangia, Smiley, Olson, Gilman & Pangia, Washington, D.C., for plaintiff.

Morton H. Clark, Vandeventer, Black, Meredith & Martin, William Peck, Seawell, Dalton, Hughes & Timms, Norfolk, Va., for defendants.

### OPINION

DOUMAR, District Judge.

This matter is before the Court on defendants' pretrial motion for partial summary judgment. On June 22, 1983 the plaintiff, Harold L. Bohlinger, allegedly injured his knee while working on the M/V Sea Venture, a reconstructed motor vessel. Relying on the Jones Act, 46 U.S.C. § 688, and general admiralty and maritime law, the plaintiff brings suit against the defendants, who are responsible for either the

---

operation, ownership or repair of the vessel.

The immediate motion before the Court concerns the plaintiff's Jones Act claim. The plaintiff alleges that while employed as a seaman, he injured his knee when inspecting the vessel's "double bottoms" in an attempt to determine if the rebuilding work was complete. He maintains that the defendants' joint and several negligence caused his injury. The defendants claim that the vessel was not "in navigation" and therefore the plaintiff could not be a seaman as required by the Jones Act. The plaintiff, however, is of the opinion that whether the vessel was "in navigation" is a factual dispute which must be decided by a jury.

The Court, for the reasons developed below, holds that the M/V Sea Venture was not "in navigation" under the Jones Act at the time of plaintiff's injury and therefore the plaintiff was not "a seaman" within the contemplation of the Jones Act. Accordingly, the defendants' motion for partial summary judgment is GRANTED and Count I brought pursuant to the Jones Act is DISMISSED. The Court indicated it would issue a detailed opinion on this particular ruling after the trial and said opinion follows.

## I. BACKGROUND

The M/V Sea Venture is a reconstructed chemical tanker presently engaged in service around the United States. The vessel's genesis traces back to a maritime collision between its predecessor, the Hellenic Carrier and the LASH Atlantico. As a result of the collision, the Hellenic Carrier was sliced into two hulks. The Sea Venture's aft and bow sections came from the salvaged Hellenic Carrier and its midsection was manufactured anew. The rebuilding began July 17, 1981, in Norfolk, Virginia. The three sections were completely welded and the Sea Venture was afloat by February 21, 1983. Under various contracts involving one or more of the defendants, the renovation was supposed to be completed by July 1, 1983. The rebuild-

ing was completed by codefendant Allied Repair Service, (Deposition of O.B. Jones at 7–8), sometime during the summer of 1983.

Following an earlier position with Allied Towing Corporation as a field representative, the plaintiff was hired by codefendant Allied Tankships, Inc. in June, 1983. Evidence of plaintiff's hiring may be found in a verified handwritten note sent by an agent of Allied Tankships to a bookkeeper of said codefendant. The note reads as follows:

TO: Connie Davis

FROM: Denny Harrison

SUBJECT: New Employee Sea Venture

Please place Harold Bohlinger on ATI Payroll as Able Seaman. Annual Salary $24,000. I will pay day for day on payroll book. Start date 6/21/83.

Thank you,
Denny

All paperwork attached

The plaintiff stated in his deposition that upon being hired on June 21 he began stenciling life rings, life jackets, etc. with the name M/V Sea Venture. This apparently required the plaintiff to board the vessel and remove the equipment to an adjacent warehouse. (Deposition of plaintiff at 23–24). The plaintiff claims that he was injured the next day. The plaintiff alleges that on June 22, 1983 his supervisor, O.B. Jones, ordered him to inspect the vessel's "double bottoms". (Id. at 17). As outlined in the complaint:

3. At all pertinent times, plaintiff was an able-bodied seaman employed by the defendants to perform work traditionally performed by seamen particularly on and about the M/V Sea Venture.

4. On or about June 22, 1983, while the M/V Sea Venture was docked in Norfolk, Virginia, the plaintiff was ordered to climb down into the double bottoms, an area of approximately three to four feet high above the very bottom of the ship and below the cargo tanks, to check for debris and to clean up any loose matter prior to sealing that area.

5. While performing his assigned task, which required him to pass through "manholes" in the longitudinal bulkheads within the double bottoms intended for such access, he became trapped in one of the manholes which was insufficient and defective in size and design, thus seriously and permanently injuring the plaintiff's knee.

Second Amended Complaint filed December 11, 1984. His immediate supervisor, Mr. Jones, claims no injury report was filed and no notification concerning plaintiff's injury was given on or about that date. (Deposition of O.B. Jones at 25).

The plaintiff maintains that his knee injury was later aggravated when he subsequently went to sea with the Sea Venture. Redress for the alleged subsequent injury is in no way affected by this order.

The events which transpired *after* the initial alleged injury leading to the M/V Sea Venture's maiden voyage are, however, critical to the three prong analysis required to determine if the plaintiff was a seaman under the Jones Act.

The plaintiff asserts that on June 22, 1983 the vessel was under its own displacement, had a captain, and was "functionally able to navigate." It would appear that at that time there also existed a crew of eight men. The defendants claim, however, that the engines, steering gear, engine telegraph system and electric generators were not operable until July 30, 1983. Richard T. Waida, Vice President of Operations for Allied Tankships, admitted at deposition that these dates were "approximations". (Deposition at 26). Unsurprisingly, the plaintiff disputes the defendants' contention. The plaintiff claims that the vessel was launched into navigable waters with machinery that was functional prior to June 22, 1983.

Ottis B. Jones, Jr. was a port engineer for Allied Tankship, and by June 21, 1983 was employed to be a mate on the Sea Venture and was the plaintiff's supervisor. Jones stated that two sea trials of a day's duration were conducted prior to the Sea Venture's maiden voyage. He says the first sea trial of the rebuilt vessel occurred on August 9, 10 or 11, 1983. He recalls that a second sea trial took place "a couple days later" and lasted "ten or twelve hours." These dates are not disputed.

Later, on August 15, 1983 the vessel was documented by the U.S. Coast Guard as a chemical tanker. The vessel was registered with Lloyds of London and accepted by its agents on August 15, 1983. The plaintiff signed "shipping articles" as a crew member for the first time on or about August 15, 1983, and the vessel commenced coastwide services on or about the same date. (Plaintiff's Answers to Defendants' Request for Admissions, January 4, 1985). These dates are also undisputed. The plaintiff at his deposition claimed that signing of articles was only significant in that "everybody would begin to accrue ... for every day worked ... a day off with pay, at that point in time...." (Plaintiff's Deposition at 4).

According to the plaintiff, the crew which sailed consisted of somewhere between 15 and 32 members, whereas it consisted of about 8 members on the alleged injury date. The vessel was neither accepted by the owners nor in any way in commerce on June 22, 1983, although, for purposes of this motion, it was in navigable waters with machinery which could have conceivably been operated on June 22, 1983.

## II. ANALYSIS

The plaintiff pursues his Jones Act negligence claim pursuant to 46 U.S.C. § 688, which reads in pertinent part:

§ 688. Recovery for injury to or death of seaman. (a) Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any

seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

*Id.* The determination of whether an employee has attained "seaman" status under the Act is steeped in years of Supreme Court case law. *See, e.g., Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1951); *Gianfala v. Texas Co.,* 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955); *Senko v. LaCrosse Dredging Corp.,* 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957) *reh'g denied,* 353 U.S. 931, 77 S.Ct. 716, 1 L.Ed.2d 724 (1957); *Butler v. Whiteman,* 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958).

As a result of the many Supreme Court cases, there has evolved a "three prong test for determining seaman status that has been cited and restated by virtually every court that has subsequently considered this issue." 1B Benedict on Admiralty, § 11a, at 2–5 (7th Ed.) The Fifth Circuit in *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959) is credited as a progenitor of this distilled three prong test which inquires whether:

> (1) the employee was working on or in connection with a vessel in navigation; (2) the employee had a more or less permanent connection with that vessel; and (3) the employee was aboard the vessel primarily to aid in navigation [footnote omitted].

1B Benedict on Admiralty, § 11a at 2–5.

In *Williams v. Avondale Shipyards, Inc.,* 452 F.2d 955 (5th Cir.1971) (Brown, C.J.), the plaintiff was an engineering draftsman for a shipyard. He was assigned to go aboard the newly constructed U.S. Coast Guard Cutter Hamilton's first sea trials, as a data-taker and gauge monitor. The remainder of the crew were shipyard employees. *Id.* at 957. The Court briefly cited the traditional Jones Act three prong analysis, *supra,* and then stated:

> As to the first of those three elements, we hold that Hamilton was not "in navigation" as that term has been defined by the courts at the time of Williams' injuries. It is true that Hamilton was at sea and underweigh at that time, but "it is fallacious to assume that whenever a tort occurs on navigable waters, the person injured will automatically avail himself of the Jones Act."
>
> The term "in navigation" means "engaged in an instrument of commerce and transportation on navigable waters."
>
>    \*    \*    \*    \*    \*    \*
>
> For there to be a seaman, there must first be a ship. And an incompleted vessel not yet delivered by the builder is not such a ship. Ship and seaman, ship and seaworthiness are mutual reflexes.

*Id.* at 958 (citations omitted). The instant plaintiff's alleged initial injury occurred over a month before any sea trials took place. Only a skeletal crew of eight persons had been assembled by June 22, 1983. Furthermore, delivery of the completed vessel by the contractor, and acceptance by the owners and its insurers, did not occur until around mid-August. The stenciling of life jackets with the rebuilt vessel's new name and the other similar activities taking place in June were all preliminary to the vessel's commencement "in navigation", despite the fact that the alleged injury occurred while the plaintiff was inspecting the vessel's bottoms.

There is also substantial authority, with respect to a motor vessel, "that one becomes a seaman from the time of signing the articles and that his status and obligations are determined thereby." *Bodden v. Coordinated Caribbean Transp.,* 369 F.2d 273, 275 (5th Cir.1966) (Bell, C.J.) (citations omitted). In the instant case, the signing of articles did not occur until August 1983.

The Court finds that despite the fact that the plaintiff was hired as a "able seaman"

on June 21, 1983, the vessel was not "in navigation" as defined by the Jones Act on June 22, 1983. As of June 22, 1983 all efforts of the crew members including the plaintiff were designed to place the M/V Sea Venture "in navigation," and to bring the vessel to a seaworthy condition. Those very activities performed by the plaintiff which resulted in his alleged injury had to be completed prior to the vessel being placed in navigation.

Perhaps it is a corollary concept that where a contractor takes efforts, such as sea trials and the like, to ascertain any additional work required to deliver a vessel undergoing repairs to its owner, no warranty of seaworthiness attaches. *Williams, supra*, 452 F.2d at 957. Such efforts by their nature are to determine what work is required to make a vessel fully fit. *Id.*

In the instant case, the M/V Sea Venture, was not in navigation on June 22, 1983. It had "yet to take her place in commerce and navigation...." *Frankel v. Bethlehem-Fairfield Shipyard,* 132 F.2d 634, 635 (4th Cir.1942), *cert. denied,* 319 U.S. 746, 63 S.Ct. 1030, 87 L.Ed. 1702 (1943).

The Court therefore holds that at the time of the plaintiff's alleged injuries, the vessel was not "in navigation" as defined by the Jones Act. The plaintiff was therefore not a seaman for the purposes of the Jones Act. Accordingly, the defendants' partial summary judgment motion is GRANTED and the Jones Act claim is DISMISSED.

IT IS SO ORDERED.