**Harry T. BOWERS, Appellant,**

v.

**KAISER STEEL CORPORATION, Appellee.**

**No. 703.**

Supreme Court of Alaska.

Jan. 20, 1967.

William M. Erwin and John M. Savage, Anchorage, for appellant.

Gordon W. Moss, Seattle, Wash., Arthur D. Talbot, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

The superior court granted summary judgment in appellee's favor by holding that as a matter of law appellant was neither a seaman nor a member of the crew of any vessel within the purview of the Jones Act.[1] We affirm.

Appellant instituted an action in the superior court against appellee Kaiser Steel Corporation under the Jones Act. Appellant alleged that while employed by Kaiser he was

> working as a seaman * * * by offloading steel girders from a barge owned by Foss Launch & Tug Company, In-

---

[1] 38 Stat. 1185 (1915), 46 U.S.C. § 688 (1964). This act provides in part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury * * *.

corporated, on navigable waters of the United States in Cook Inlet, Alaska. That * * * [he] was a seaman at the time of his injury because he was on said barge which was held against the tower by two tugboats and he was doing the work of a seaman in hooking up the steel girders for the crane to pick up.

Appellant asserted that he was injured due to the fault of an employee of Kaiser whose negligent operation of a crane knocked him into the hold of the barge. Pertinent to this appeal is Kaiser's second affirmative defense where it asserted that appellant's exclusive remedy was under the Longshoremen's & Harbor Workers' Compensation Act, 44 Stat. 1424–1446 (1927), 33 U.S.C. §§ 901–950 (1964).[2]

After issue was joined Kaiser moved for summary judgment on the ground that as a matter of law appellant "was not a seaman" or "member of the crew of any vessel" entitled to sue under the Jones Act and was therefore "barred from maintaining this suit by the provisions of the Longshoremen's & Harbor Workers' Compensation Act."[3] Appellee Kaiser based its mo-

tion for summary judgment on appellant's deposition and the affidavit of Roderick A. Chisholm, appellee's project manager.[4]

In granting summary judgment in appellee's favor, the trial court dismissed appellant's "complaint and the within action * * * with prejudice." In his brief appellant presents a single specification of error, namely, that the lower court erred in granting summary judgment since the question of "Who is a Seaman" under the Jones Act is a factual question requiring resolution by the trier of fact.

In 1915, Congress enacted the Jones Act which gave seaman the right to elect to sue "for damages at law" for injuries suffered in the course of their employment.[5] In International Stevedoring Co. v. Haverty[6] the Supreme Court of the United States held that the longshoremen engaged in loading and unloading a vessel at a dock in navigable waters were seamen under the provisions of the Jones Act. Subsequent to that decision the Longshoremen's & Harbor Workers' Compensation Act was passed by Congress.[7] This act covers employees "employed in maritime employment, in whole or in part, upon the navigable waters of the United States,"[8] excluding

---

**2.** In this second affirmative defense appellee specifically alleged that:

[A]t the time of his injuries plaintiff was employed as a structural iron worker in connection with the construction of an oil drilling platform and tower permanently secured to the floor of Cook Inlet, Alaska; and was covered by the provisions of the Longshoremen's and Harbor Workers' Compensation Act * * *.

**3.** 44 Stat. 1426 (1927), 33 U.S.C. § 903 (a) (1) (1964), of the Longshoremen's & Harbor Workers' Compensation Act provides:

(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States * * *. No compensation shall be payable in respect of the disability or death of—

(1) A master or member of a crew of any vessel * * *.

Section 905 of the act provides:

The liability of an employer prescribed in * * * this title shall be exclusive and in place of all other liability of such employer to the employee * * * except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee * * * may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

**4.** Appellant's only opposition to the motion was a brief filed in "Opposition To Motion For Summary Judgment."

**5.** 38 Stat. 1185 (1915), 46 U.S.C. § 688 (1964).

**6.** 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157 (1926).

**7.** 44 Stat. 1424–1446 (1927), 33 U.S.C. §§ 901–950 (1964).

**8.** 44 Stat. 1425 (1927), 33 U.S.C. § 902 (4) (1964).

from its coverage "[a] master or member of a crew of any vessel".[9]

After stating that the Longshoremen's & Harbor Worker's Compensation Act remedy is exclusive, Chief Justice Hughes, in South Chicago Coal & Dock Co. v. Bassett,[10] wrote:

They [seamen] preferred however to remain outside the compensation provisions and thus to retain the advantages of their election under the Jones Act, and the bill was changed accordingly so as to exempt 'seamen'. Then, in its final passage, the words 'a master or member of a crew' were substituted for 'seamen'. We think that this substitution has an important significance here. For we had held that longshoremen engaged on a vessel at a dock in navigable waters, in the work of loading or unloading, were 'seamen'.

\*　　\*　　\*　　\*　　\*　　\*

This Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen (International Stevedoring Company v. Haverty \* \* \* ), were still regarded as distinct from members of a 'crew'. They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation.

With this brief historical sketch in mind we turn to the merits of this appeal.[11]

Appellant was hired by Kaiser in August of 1964 in Anchorage, Alaska, through Local 751 of the Ironworkers' Union.[12]

Appellant immediately went to work for Kaiser at a Middleground Shoal platform located in Cook Inlet.[13] This oil drilling platform had been secured to the floor of Cook Inlet prior to appellant's commencement of his employment.[14]

At the time of the accident on November 4, 1964, appellant's position was that of foreman over the unloading and loading of materials from barges to the drilling platform. Appellant did not perform any work on the barges other than that of loading and unloading. Appellant had four or five ironworkers (employees of Kaiser) under his supervision and was himself subject to the orders of both Kaiser's general foreman and superintendent.

On the day of the accident, appellant was supervising the unloading of Foss Barge No. 185 which was owned by the Foss Launch & Tug Company. This barge was utilized for the transportation of construction materials to the Drilling Platform, which Kaiser was under contract with Shell Oil Company to construct. The Foss Barge No. 185 was not self-propelled and had no crew. It was towed to and from the location of the Drilling

9. 44 Stat. 1426 (1927), 33 U.S.C. § 903(a)(1) (1964); see also 44 Stat. 1425 (1927), 33 U.S.C. § 902(3) (1964).

10. 309 U.S. 251, 257, 260, 60 S.Ct. 544, 547, 84 L.Ed. 732, 736–737 (1940). (Footnote omitted.)

11. State courts have jurisdiction over Jones Act actions. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

12. During the previous twenty years appellant belonged to no other union and had never been to sea as a seaman.

13. The record shows that Kaiser was building this drilling platform for the Shell Oil Company. The record further shows that at the time of the accident appellant was living in a rented house on shore and that prior to that date he had lived part of the time in quarters on the platform and part of the time ashore.

14. Appellant does not contend that the drilling platform was a vessel. In his affidavit Roderick Chisholm asserted that the drilling platform was not and never had been capable of floating, and that on approximately August 16, 1964, its legs were "upended and secured permanently to the floor of Cook Inlet, and compartments thereof were flooded."

Platform at the job site by a tug boat owned and operated by Foss Launch & Tug Company, pursuant to a towing contract between Foss Launch & Tug Company and Kaiser Steel Corporation by which Foss furnished the services of a fully-manned tug, as required by Kaiser, for an agreed consideration. All navigation of the barge was accomplished by the Foss tug and its crew * * *.[15]

The only time that appellant came under the supervision of the officers of the tug was when "the seas got too rough and they could no longer hold the barge in position." At such time the officers of the tug would tell appellant to "knock off."

Appellant's deposition also disclosed that Foss kept four or five of these barges anchored off shore "with miscellaneous pieces of structure on board. They would bring them in with the right components that we wanted. We'd load off the barge, erect the tower off them." Appellant could not estimate how many times he had been on board Foss Barge No. 185, or whether he had ever been on the barge prior to the accident.[16]

Against this undisputed factual background appellant contends here, as he did below, that a jury question was presented on the issue of whether he was a seaman under the Jones Act. In support of his position, appellant relies primarily on four decisions of the Supreme Court of the United States, namely, Butler v. Whiteman;[17] Grimes v. Raymond Concrete Pile Co.;[18] Senko v. LaCrosse Dredging Corp.;[19] Gianfala v. Texas Co.;[20] and the Fifth Circuit's decision in Offshore Co. v. Robi-

son.[21] Although these decisions reflect a most expansive construction of the terms "seamen" and "member of a crew of any vessel," we do not interpret them as requiring that the question of appellant's status be submitted to a jury under the facts of this case.[22]

In reviewing the *Gianfala* case, Judge Wisdom, in Offshore Co. v. Robison,[23] wrote:

Gianfala * * * is the key case in the conversion of offshore oil field workers into seamen. Gianfala * * * did regular oil field work aboard a submersible drilling barge. The barge was resting on the bottom of a bay at the time of the accident. * * * The defendant contended that the drilling barge was not a vessel in navigation and that the decedent was an oil field employee whose duties were not primarily in aid of navigation. The trial court held that the decedent's status was a question for the jury. This Court reversed * * * holding that the facts were undisputed and that the applicability of the Jones Act is a question of law to be determined by the court. As a matter of law, the decedent was not aboard ship, primarily to aid in navigation; 'on the contrary he was aboard ship not as a member of the ship's crew, but as a member of the drilling crew' doing work done only by oil field workers. The Supreme Court, in a short per curiam opinion, granted a writ of certiorari, reversed this Court, and remanded the case to the district court with directions to reinstate its judgment.

15. From the uncontroverted affidavit of Roderick Chisholm, project manager of appellee.

16. Appellant also testified that he was paid workmen's compensation benefits during the period of time he was absent from work due to the injuries in question.

17. 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958).

18. 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958).

19. 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957).

20. 350 U.S. 879, 76 S.Ct. 141, 100 L.Ed. 775 (1955).

21. 266 F.2d 769, 75 A.L.R.2d 1296 (5th Cir. 1959).

22. At the time he filed his complaint appellant filed a demand for a jury trial.

23. 266 F.2d at 774.

*Senko* concerned a handyman employed on a dredge who was injured by the explosion of a coal stove located in an onshore shed (the explosion occurred while the handyman was placing a signal lantern in the shed). After alluding to its decision in Swanson v. Marra Bros.,[24] in which it held that the Longshoremen's & Harbor Workers' Compensation Act restricts the scope of the Jones Act to "members of the crew of a vessel", the Supreme Court said:

> We believe, however, that there is sufficient evidence in the record for the jury to decide that petitioner was permanently attached to and employed by the dredge as a member of its crew.
>
> Petitioner's witnesses testified that he was known as a 'deckhand' among rivermen. They said that he was hired to clean and take care of the deck, splice rope, stow supplies, and, in general, to keep the dredge 'in shape.' This testimony indicated that substantially all of petitioner's duties were performed on or for the dredge. A normal inference is that petitioner was responsible for its seaworthiness. If the dredge leaked, for example, the jury could suppose that his job would be to repair the leak.
>
> \*  \*  \*  \*  \*  \*
>
> Because there was testimony introduced by petitioner tending to show that he was employed almost solely on the dredge, that his duty was primarily to maintain the dredge during its anchorage and for its future trips, and that he would have a significant navigational function when the dredge was put in transit, we hold

there was sufficient evidence in the record to support the finding that petitioner was a member of the dredge's crew.[25]

The *Grimes* case involved a Jones Act suit by a pile driver who was injured while being transferred at sea in a Navy life ring from a tug to a Texas tower.[26] Petitioner had assisted in the completion of the tower and

> [w]hen the tower was towed to sea, petitioner with about 25 other workmen lived on the tower and kept it in condition by operating air compressors, generators, and pumps to expedite installation at the permanent site, as well as by performing certain functions to keep it in safe tow. After the tower was anchored at its permanent site and while the temporary pilings were being driven down, petitioner performed only pile-driving.[27]

The Supreme Court held that petitioner's evidence "presented an evidentiary basis for a jury's finding whether or not the petitioner was a member of a crew of any vessel." [28]

In *Butler*,[29] the terms "seaman" and "a member of a crew" again received a broad reading by the Supreme Court of the United States. In holding that "the petitioner's evidence presented an evidentiary basis for jury findings as to \* \* \* whether or not the petitioner's decedent was a seaman and member of the crew of the tug within the meaning of the Jones Act," the Court cited the *Senko, Gianfala,* and *Grimes* cases. Factually, decedent had been employed as a laborer doing odd jobs around respondent's wharf and at the time of the accident had been engaged in cleaning the

24. 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946).

25. 352 U.S. at 372–374, 77 S.Ct. at 415, 1 L.Ed.2d at 407–408. Note Justices Harlan, Frankfurter, and Burton dissented.

26. The Texas tower was described, in the *Grimes* case, as "a triangular metal platform superimposed some 60 feet above the surface of the sea on supports permanently affixed to the floor of the ocean by three caissons, and utilized to operate a radar warning station." 356

U.S. at 254, 78 S.Ct. at 689, 2 L.Ed. 2d at 739.

27. The quote is from Justice Harlan's dissent in the *Grimes* case. 356 U.S. at 254–255, 78 S.Ct. at 688, 2 L.Ed.2d at 740. Justice Whittaker joined in Justice Harlan's dissent.

28. Id. at 253, 78 S.Ct. at 688, 2 L.Ed.2d at 739.

29. 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958).

boiler of respondent's tug.[30] Although previously withdrawn from navigation at the time of the accident, the "tug was undergoing rehabilitation preparatory to a Coast Guard inspection, presumably in anticipation of a return to service."[31] Decedent was last seen alive running across the barge to the tug.

After reviewing the foregoing decisions of the United States Supreme Court, the Fifth Circuit in the *Offshore* case concluded:

> Attempts to fix unvarying meanings have [sic] a firm legal significance to such terms as 'seaman', 'vessel', 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case.[32]

The gist of appellee's position in this appeal is that appellant argues for too expansive an interpretation, and application, of the *Butler, Grimes, Senko,* and *Gianfala* decisions. Succinctly stated, appellee's contention is that "an employee whose sole function aboard a vessel is to load or unload cargo from it is not a member of the crew as a matter of law." As we have indicated previously, we are in accord with appellee's position.

In South Chicago Coal & Dock Co. v. Bassett,[33] the Supreme Court defined member of a crew as "employees on the vessel who are naturally and primarily on board to aid in her navigation." Some seventeen years later in the *Senko*[34] case, the test was apparently changed to one of whether the employee "would have a significant navigational function".

In Swanson v. Marra Bros.,[35] the Supreme Court of the United States held that, by virtue of the provisions of the Long-

---

**30.** Respondent's tug was lashed to a barge which in turn was moored to respondent's wharf "all situated on the Mississippi River."

**31.** The facts are taken from Justice Harlan's dissent in Butler v. Whitman, 356 U.S. 271, 272–273, 78 S.Ct. 734, 735, 2 L.Ed.2d 754, 755 (1958).

**32.** Offshore Co. v. Robison, 266 F.2d 769, 779–780, 75 A.L.R.2d 1296 (5th Cir. 1959). (Footnote omitted.) The court went on to say:
> Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts. Id. at 780.

It is also of importance to note that the court in *Offshore* adopted the following test for determining whether an evidentiary basis for a Jones Act case to go to the jury exists:
> * * * (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work

on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips. Id. at 779.

**33.** 309 U.S. 251, 260, 60 S.Ct. 544, 84 L. Ed. 732, 737 (1940).

**34.** 352 U.S. 370, 374, 77 S.Ct. 415, 1 L. Ed.2d 404, 408 (1957). See also Bodden v. Coordinated Caribbean Transp. Inc., 249 F.Supp. 561, 563 (S.D.Fla.1965), where the court said:
> The essential and decisive elements of the definition of a 'member of a crew' are that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation. McKie v. Diamond Marine Co. (5th Cir. 1953), 204 F.2d 132; Zientek v. Reading Company (3rd Cir. 1955), 220 F.2d 183; Wilkes v. Mississippi River Sand & Gravel Co. (6th Cir. 1953), 202 F.2d 383; Gahagan Const. Corporation v. Armao (1st Cir. 1948), 165 F.2d 301.

**35.** 328 U.S. 1, 7, 66 S.Ct. 869, 872, 90 L. 1045, 1049 (1946).

shoremen's & Harbor Workers' Compensation Act, a longshoreman was precluded from suing his employer under the Jones Act for injuries sustained while on a pier and engaged in loading cargo onto a vessel lying alongside. In its opinion the Court said:

> We must take it that the effect of these provisions of the Longshoremen's Act is to confine the benefits of the Jones Act to the members of the crew of a vessel plying in navigable waters and to substitute for the right of recovery recognized by the Haverty Case only such rights to compensation as are given by Longshoremen's Act.

The *Swanson* decision has been followed in Kyles v. James W. Elwell & Co.;[36] Aycock v. Lykes Bros. S. S. Co.;[37] Hertel v. American Export Lines, Inc.;[38] and Garland v. Alaska S. S. Co.[39] In the *Aycock* case, the court said:

> Longshoremen, as a matter of law, have not been regarded as crewmen of a vessel belonging to their employer and, therefore, are not qualified to maintain a civil action against their employer-vessel owner under the Jones Act.[40]

■ We believe that the *Swanson* line of cases are controlling and therefore affirm the lower court's summary judgment. The record demonstrates that appellant's

duties, and the actual work he was performing at the time of his injury, were those of a longshoreman. He was not aboard the Foss Barge No. 185 "primarily * * * to aid in her navigation" nor did he perform, nor was he expected to perform, "a significant navigation function" in regard to this barge. Appellant's only nexus with the barge in question was to unload and load it after it had been placed in position alongside of the drilling platform.

■ We do not read the *Butler, Grimes, Senko,* and *Gianfala* line of decisions as precluding grants of summary judgments or directed verdicts once Jones Act status has been asserted. In this regard the Fifth Circuit's post-*Offshore* opinion in Rotolo v. Halliburton Co.[41] is pertinent. There the court quoted *Offshore* as follows, in part:

> [I]n spite of the Gianfala to Grimes—Butler series of cases * * * a court, trial or appellate, may in the proper case hold that there is no reasonable evidentiary basis to support a jury finding that an injured person is a seaman and member of a crew of a vessel under the Jones Act.

In the *Rotolo* case, the Fifth Circuit sustained the trial court's grant of a directed verdict against appellant who had claimed

36. 296 F.2d 703, 704 (7th Cir. 1961), cert. denied, 369 U.S. 852, 82 S.Ct. 936, 8 L.Ed. 2d 10 (1962).

37. 236 F.Supp. 360, 361 (S.D.Tex.1964).

38. 225 F.Supp. 703, 705 (S.D.N.Y.1964).

39. 217 F.Supp. 757, 759 (D.Alaska 1963).

40. Judge Walter H. Hodge, in his opinion in Garland v. Alaska S.S. Co., 217 F.Supp. 757, 759 (D.Alaska 1963), after quoting from the *Swanson* opinion, wrote: This principle has also been clearly announced in decisions of the district courts upon facts similar to those in the instant case, holding that the sole issue as to the scope of the remedy provided by the Jones Act, as narrowed by the Compensation Act, is whether or not the plaintiff or libelant was at the time of his injury a member of the crew, and not whether he was doing seamen's work or was in fact a seaman, that the character of the work being performed is not a controlling factor, and that longshoremen who load and unload a vessel under temporary local employment do not become members of the crew. Kraft v. A. H. Bull S.S. Co., Inc., (D.C.N.Y.) 28 F.Supp. 437; Mamat v. United Fruit Co., (D.C.N.Y.) 39 F.Supp. 103; Rackus v. Moore-McCormack Lines, Inc., (D.C. Pa.) 85 F.Supp. 185; Skow v. Gypsum Carrier, Inc., (N.D.Cal.) 164 F.Supp. 879; Sullivan v. American President Lines Ltd., (N.D.Cal.) 206 F.Supp. 547.

41. 317 F.2d 9, 12 (5th Cir.), cert. denied, 375 U.S. 852, 84 S.Ct. 111, 11 L.Ed.2d 79 (1963).

he was a seaman under the Jones Act.[42] In Thibodeaux v. J. Ray McDermott & Co.,[43] the Fifth Circuit, in another post-*Offshore* decision, affirmed a directed verdict in favor of the employer in Jones Act litigation. In the *Thibodeaux* case, the court said:

Of course, there is nothing novel in the hope behind this claim. But in the final analysis what it is is the mistaken belief of so many that merely because the status of *who* is a seaman may be a question of fact, the principles summarized by us in Offshore Co. v. Robison * * * perforce make every case one of fact for jury decision. Neither that opinion nor the cases it discussed made any such declaration.[44]

In short, we hold that the superior court correctly ruled that appellant was not a seaman or a member of the crew of the Foss barge within the purview of the Jones Act. Our review of the record has led us to the conclusion that there is no reasonable evidentiary basis which would support a jury's finding that appellant was a seaman and a member of the crew of Foss Barge No. 185 at the time he was injured.

The *Butler, Grimes, Senko* and *Gianfala* decisions are distinguishable in that the injured employees had performed, or were expected to perform, navigational functions in relation to the vessels (special purpose or otherwise) in question. Here appellant had

42. Rotolo was a welder who was assigned to repair a crack in the hull of one of his employer's vessels. Rotolo's duties did not involve an assignment to one or more specified boats.

43. 276 F.2d 42, 46 (5th Cir. 1960).

44. The court in *Thibodeaux* also stated:
Here the decedent fails on many scores. He was a regular shore worker. He lived, ate and slept at home. He was not attached to or assigned to any particular vessel either as a member of a crew or otherwise. His customary duties were in welding and cutting on vessels under construction, conversion or outfitting. His relation to the barge McDermott No. 5 was purely transitory—both in point of work

not performed, and it was not anticipated that he would perform, any navigational function in regard to this unmanned barge owned by Foss Tug.[45] Appellant was a maritime worker whose only duties in connection with this barge were those of a longshoreman. Under the *Swanson* line of decisions we affirm the summary judgment which was entered by the superior court.

to be done and the time of its duration. He was to weld to enable proper securing of cargo for the intended ocean voyage. None of the workers engaged in loading and securing the cargo either were to, or could, make the voyage on this unmanned barge. * * * Clearly what the decedent was doing and had been doing for four days did not make him then a seaman. Id. at 46–47.
See also Dixon v. Oosting, 238 F.Supp. 25 (E.D.Va.1965).

45. Even under the *Offshore* test, the record does not furnish an evidentiary basis for concluding that appellant was a seaman and a member of the crew.