Bruce A. SCOTT, Appellant,

v.

BRIGGS WAY CO., Emorene Briggs, Roger Briggs, as individuals, and d/b/a Briggs Way Co., and the F/V Chris's Special, her engines, tackle, gear, and furniture, jointly and severally, Appellees.

No. S–5842.

Supreme Court of Alaska.

Jan. 19, 1996.

Charles W. Coe, Anchorage, for Appellant.

John W. Hendrickson, Anchorage, for Appellees.

1. Scott was not a salaried employee, but fished "for shares," *i.e.*, a percentage of the fish caught.

2. In an affidavit filed in opposition to the Briggs' motion for summary judgment, Scott stated: "I was a maintenance person prior to the salmon season and worked as a crewmember at their set net site during the salmon season. I worked on machinery and rebuilt engines prior to the season starting." Further, he stated: "At least two weeks before the salmon season opened ... I was ordered to move several large set net buoys...." Further, he stated: "[t]he setnet operation *I was scheduled to work on* utilized several 23 foot boats ... I crewed these boats and tended all aspects of the set nets *during the season*. The buoys being lifted during the accident were for the setnet operation." (Emphasis added.) In his Memorandum in Support of Opposition to Defendants['] Motion for Summary

Before MOORE, C.J. and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

PER CURIAM.

### I. *INTRODUCTION*

Emorene Briggs and Roger Briggs, doing business as Briggs Way Co., operate a set net fishing business. The Briggs employed Bruce Scott in June and July 1990 to work at their Ugashik River set net site as a maintenance person and crew member.[1] In June 1990 Scott and his co-worker, Ryan Connor, were working on land, moving set net buoys.[2] Scott was injured when the little finger on his right hand was crushed between a buoy and a forklift.

Scott filed a complaint against the Briggs in June 1992, seeking relief under principles of general negligence, the Jones Act, and maritime law. The superior court granted the Briggs' motion for summary judgment.[3] It awarded the Briggs $4,050 in attorney's fees under Alaska Civil Rule 82. Scott appeals.

### II. *DISCUSSION*

#### A. *Negligence*

Scott contends that the Briggs were negligent because of the foreseeable harm in moving set net buoys with a forklift. Howev-

Judgment, Scott asserted that "[t]he set net salmon season was not set to start for 2–3 weeks after this [accident] happened," and that "when this accident took place the season had not yet started."

3. We review summary judgment to determine whether there exists any genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). In doing so, we draw all reasonable inferences of fact in favor of the non-moving party. *Id.* Issues of negligence ordinarily are not susceptible to summary adjudication. *See Sweaney v. Alaska Cent. Airways, Inc.*, 658 P.2d 780, 781 (Alaska 1983); *Webb v. City & Borough of Sitka*, 561 P.2d 731, 735 & n. 16 (Alaska 1977); *Lillegraven v. Tengs*, 375 P.2d 139, 142 & n. 16 (Alaska 1962).

er, several material facts remain in dispute.[4] Drawing all reasonable inferences in Scott's favor, we conclude that there existed a genuine issue of material fact regarding the Briggs' alleged negligence. Accordingly, we reverse summary judgment on the issue of the Briggs' negligence.

### B. *Jones Act*

Scott contends that he is a "seaman in the service of" a vessel for the purposes of the Jones Act[5] and can maintain an action in negligence against the Briggs, his employers. The Briggs dispute the applicability of the Jones Act.

■■■ Both parties cite *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991), to support their position. *Wilander* held that "seaman" status under the Jones Act depends on "employment-related connection to a vessel in navigation.... It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work." *Id.* at 355, 111 S.Ct. at 817. The Supreme Court has recently clarified the test for seaman status under the Jones Act, delineating a two-part test. *Chandris, Inc. v. Latsis*, —— U.S. ——, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). First, the

> "employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" [*McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355,

111 S.Ct. 807, 817, 112 L.Ed.2d 866 (1991) (quoting *Offshore Co. v. Robison*, 266 F.2d 769, 779 (5th Cir.1959)).]

*Id.* at ——, 115 S.Ct. at 2190. Second,

> a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and nature.

*Id.* Although noting that "[w]hen a maritime worker's basic assignment changes, his seaman status may change as well," *id.* at ——, 115 S.Ct. at 2191, the Court emphasized that

> the Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to "the special hazards and disadvantages to which they who go down to the sea in ships are subjected."

*Id.* at ——, 115 S.Ct. at 2190 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104, 66 S.Ct. 872, 881, 90 L.Ed. 1099 (1946) (Stone, C.J., dissenting)). The court noted with approval the Fifth Circuit's general guideline that "a worker who spends less than about thirty percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at ——, 115 S.Ct. at 2191.

■■ The record indicates that the Briggs used several twenty-three foot skiffs in their set net operations during salmon season.[6] Nonetheless, that fact alone does not make Scott a seaman for the purposes of the Jones Act. Scott was injured while moving a set net buoy, rather than while working on a skiff.[7] Because 1) the accident happened "at

---

4. The parties dispute (1) whether Scott requested permission to move the set net buoys with chains instead of a forklift; (2) whether Scott's injury was caused by the Briggs' failure to supervise the buoy-moving procedure or Scott's negligence in "put[ting] his hand in the wrong place"; or (3) whether Connor was operating the forklift negligently so as to impose vicarious liability on the Briggs.

5. The Jones Act, 46 U.S.C.App. § 688 (1988), provides in part: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right to trial by jury...." Summary judgment is appropriate where there is no evidentiary basis from which to conclude that a plaintiff is a "seaman." *Bowers v. Kaiser Steel Corp.*, 422 P.2d 848, 854–55 (Alaska), *cert. denied*, 388 U.S. 910, 87 S.Ct.2112, 18 L.Ed.2d 1348 (1967).

6. Courts have found small boats such as skiffs to be "vessels" under the Jones Act. *See, e.g., Stallworth v. McFarland*, 350 F.Supp. 920 (W.D.La. 1972), *aff'd*, 493 F.2d 1354 (5th Cir.1974) (employee drowned when fourteen foot skiff in which he was riding swamped on navigable lake); *Spiller v. Thomas M. Lowe, Jr. & Assocs., Inc.*, 328 F.Supp. 54 (W.D.Ark.1971), *aff'd*, 466 F.2d 903 (8th Cir.1972) (employee drowned when sixteen foot skiff in which he was riding capsized on navigable river).

7. In an insurance report to the Alaska Department of Labor, Fishermen's Fund, Emorene Briggs provided the following answers:

   Name of vessel *Set net site*
   The vessel does have Protection and Indemnity (P & I) insurance. The deductible amount is ————.

least two weeks before the salmon season opened," 2) Scott worked as a maintenance person prior to the salmon season and not as a crew member at the set net site until the season, and 3) Scott had no apparent connection to any vessel in navigation as a part of his maintenance duties when injured, Scott was not a seaman at that time.[8] Moreover, it is immaterial that Scott's employment may have contemplated future operations in which a skiff was utilized: "the law does not cover probable or expectant seamen but seamen in being." *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 191, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952). Scott, when injured, was carrying out his pre-salmon season dryland assignment and had not yet begun to carry out his assignment attending set nets. He was not yet "doing the ship's work," *Wilander*, 498 U.S. at 355, 111 S.Ct. at 817, and thus he had not yet assumed the status of "seaman."[9]

Drawing all reasonable inferences in Scott's favor, we conclude that there is no genuine issue of material fact as to his status; he was not a "seaman" covered by the Jones Act or general maritime law. We therefore affirm summary judgment as to this issue.

In view of our reversal of the summary judgment on the issue of the Briggs' negli-gence, the award of attorney's fees is vacated.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.

MATTHEWS, Justice, with whom RABINOWITZ, Justice, joins, dissenting in part.

A motion for summary judgment should not be granted when genuine issues of material fact exist. Alaska R.Civ.P. 56(c). A trial court in addressing a motion for summary judgment, and an appellate court in reviewing a case in which a motion for summary judgment has been granted, should view the record in the light most favorable to the nonmovant. The court should also draw all reasonable inferences in favor of the nonmoving party and against the movant. *Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 244 n. 6 (Alaska 1993); *Lord v. Fogcutter Bar*, 813 P.2d 660, 662 (Alaska 1991). Further, the burden of establishing the absence of genuine issues of material fact must be shouldered by the movant. *Cannone v. Noey*, 867 P.2d 797, 801 n. 4 (Alaska 1994); *Capener v. Tanadgusix Corp.*, 884 P.2d 1060, 1074 (Alaska 1994).

---

(Briggs wrote through this question: "*N/A*".)
A claim has been made to the P & I insurance carrier.
A claim has not been made to the P & I insurance carrier because:

_____
_____
_____

(Briggs wrote in this space: "*No—vessel set-net fisherman*".)

8. The Briggs correctly note that "a crew at a set net site is not necessarily the crew of a single skiff." We express no opinion, however, as to whether Scott, if working on a skiff in the service of a set net on the Ugashik River, may be exposed to "the special hazards and disadvantages to which they who go down to the sea in ships are subjected." *Latsis*, —— U.S. at ——, 115 S.Ct. at 2190 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104, 66 S.Ct. 872, 881, 90 L.Ed. 1099 (1946) (Stone, C.J., dissenting)).

9. The dissent would find that a genuine, material factual dispute exists concerning Scott's claim that he was a seaman. The affidavit of Emorene Briggs, filed in support of the Briggs' Motion for

Summary Judgment, stated that "Scott ... fished on shore at these sites." Fishing on shore is not crewing a twenty-three foot boat. Attached to Ms. Briggs' affidavit was the report described in footnote 7, *supra*, which in essence stated that no vessel was involved in the accident. Scott countered with a description of his duties *before* salmon season started, his duties *after* salmon season started (which allegedly included "crew[ing] these [twenty-three foot] boats"), the fact that the accident happened at least two weeks *before* the salmon season started, and that the accident happened on shore while using a forklift to move a buoy. While there may be a dispute about Scott's activities *after* salmon season started, there appears to be no dispute as to his duties *before* salmon season started.

Scott's affidavit that he was on the water part of the time does not controvert in its entirety Ms. Briggs' assertion that his activities were shore based. It only does so with respect to activities taking place after salmon season started. The facts that appear controverted (activities during salmon season), as distinguished from those which do not appear controverted (activities pre-salmon season) are not what is at issue in this case.

The United State Supreme Court in *Chandris, Inc. v. Latsis,* —— U.S. ——, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), has synthesized a two-part test for determining whether an employee is a Jones Act seaman. The first part of the test is that the employee's duties must contribute to the function of a vessel or to the accomplishment of its mission. The second part of the test is that the employee must have a connection to a vessel in navigation, or to an identifiable group of such vessels, that is substantial in terms of both its duration and nature. *Id.* at ——, 115 S.Ct. at 2194.

The Supreme Court stressed in *Chandris* that the determination of seaman status is a mixed question of law and fact. If, in the application of the appropriate legal standard, reasonable people might differ as to whether a party is a seaman, the question must be resolved by the trier of fact:

It is important to recall that the question of who is a "member of a crew," and therefore who is a "seaman," is a mixed question of law and fact. Because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard.... On the other hand, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury."

*Id.* at ——, 115 S.Ct. at 2190 (alteration in original) (quoting *McDermott International, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991)); *see also id.* at ——, 115 S.Ct. at 2193.

The first part of the *Chandris* test is easily met in this case. Scott was a fisherman injured while handling a heavy net buoy, preparatory to placing the buoy in the water where a gill net would be attached to it. To a degree unquantified on this record some of Scott's employment activities took place aboard the large skiffs owned by his employers. These skiffs tend the nets and Scott, as a fisherman, contributed to their function and the accomplishment of their mission.

The real question in this case concerns the second part of the *Chandris* test. How substantial in terms of duration and nature was Scott's employment-related connection to his employers' skiffs? *Chandris* tells us that to answer this question we must view Scott's shoreside and skiffboard activities as a whole: "In our view, 'the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.'" *Id.* at ——, 115 S.Ct. at 2190. *Chandris* also lays down as a threshold requirement for the substantiality of a worker's durational connection to a vessel. a thirty percent guideline: "a worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* at ——, 115 S.Ct. at 2191.

Viewing the totality of Scott's employment, did he meet this guideline by spending more than thirty percent of his time aboard skiffs? The answer is that the record is silent on this point. On summary judgment, the burden fell on Scott's employers, the Briggs, to establish that Scott did not meet this threshold. *Capener,* 884 P.2d at 1074. As this burden was not discharged, summary judgment should be reversed and this case should be remanded for further proceedings.

The majority opinion circumvents the logic of this position in two ways. First, according to the majority, Scott really had two jobs. He was a maintenance person prior to the commencement of salmon fishing and a crewmember after salmon fishing began. Since Scott was injured before salmon fishing began, the beginning date for measurement of the substantiality of his employment-related connection to a group of vessels had not been reached. Op. at 347–348. Second, relying on *Desper v. Starved Rock Ferry Co.,* 342 U.S. 187, 191, 72 S.Ct. 216, 218, 96 L.Ed. 205 (1952), the majority holds that Scott was at most a "probable or expectant seaman," not a "seaman in being," because Scott had not yet begun to work aboard his employers' skiffs. As the majority puts it Scott "had not yet begun to carry out his assignment attending set nets. He was not yet 'doing the ship's work' ... and thus he had not yet assumed the status of 'seaman.'" Op. at 348. For the reasons that follow, I do not believe that

either of these reasons suffices to justify affirming summary judgment.

## The Two Jobs Rationale

In defense of the two jobs rationale adopted by the majority, it can be said that it is Scott's, or Scott's counsel's, fault that he has lost on this basis, for it is his affidavit and his counsel's memorandum which give rise to the two jobs inference.[1,2] Scott asserted that his maintenance and fishing duties were separate in order to support his claim that he was covered under the Alaska Workers' Compensation Act. Scott argued that his employers had failed to secure workers' compensation insurance for him, and he was therefore entitled to maintain a negligence action against them under the pro-employee provisions of AS 23.30.080.

There is much in the record which supports the position that Scott only had one job, with multiple responsibilities—that of a commercial fisherman. For example, in response to Scott's allegation in his complaint that at the time of the accident he "was working for defendants at their business as a crewmember and laborer," the Briggs answered with a denial, pleading affirmatively that "plaintiff was working on shares as a commercial fisherman...." The single job

1. I quote in full the relevant paragraphs of Scott's affidavit:

> 2. During the summer of 1990, I was employed by the above defendants to work at their fishing operation in Ugashik, Alaska.
> 3. I was a maintenance person prior to the salmon season and worked as a crewmember at their set net site during the salmon season. I worked on machinery and rebuilt engines prior to the season starting.
> 4. At least two weeks before the salmon season opened on June 12, 1990, I was ordered by Roger Briggs, one of my employers, to move several large set net buoys with a forklift. Ryan Connor, a co-worker, drove the forklift.
> 5. I asked Mr. Briggs to use chains to secure, lift, and move the buoys. However, Mr. Briggs disagreed with me and directed Mr. Connor and myself to only use the forklift and put the prongs through the eyes of buoys to move them.
> 6. As we did this Mr. Connor pushed the forklift into a buoy causing it to fall on my hand and crush my finger.
> ....

theme is continued in the Briggs' memorandum in support of their motion for summary judgment: "It is quite clear that Scott was a commercial fisherman. He was hired, licensed and paid as such." and: "Plaintiff injured the small finger on his right hand when moving buoys for set nets. He was a licensed commercial fishing crew member employed by Roger and Emorene Briggs who are set netters at Ugashik, Alaska." Further, the Briggs state in their reply memorandum:

> Mr. Scott had a commercial fishing license purchased June 10, 1990 and he was fishing on shares at a setnet site on the Ugashik River. In order to put the nets out the buoys have to be moved to the water. That is what he was doing and that is part of fishing.... Getting boats, nets, motor [sic] and buoys into the water is part of a fisherman's work.

Again, in their reply memorandum, the Briggs state:

> Plaintiff argues that his injury occurred several weeks before the red salmon season in Bristol Bay and that he was doing maintenance work. This argument flies in the face of the employment agreement between plaintiff and defendants. The agreement was that he would be paid a share of the catch. He was paid his full

> 8. The set net operation I was scheduled to work on utilized several 23 foot boats, which were owned by the defendants. I crewed these boats and tended all aspects of the set nets during the season. The buoys being lifted during the accident were for the set net operation.

2. The tenor of counsel's memorandum in opposition to the Briggs' motion for summary judgment is captured in the following language taken from the introductory paragraph:

> Plaintiff was doing maintenance work when this happened and should be covered by Alaska Workers' Compensation benefits, since he does not meet the exclusion of the statute. The set net salmon season was not set to start for 2–3 weeks after this happened. Alternatively, if the plaintiff was a crewmember, as defendants argue, then they are liable to him under the Jones Act ... and/or general maritime law....

Although Scott's counsel's assertions of fact, to the extent that they do not merely duplicate assertions in Scott's affidavit, cannot be used to oppose the Briggs' motion for summary judgment, they may be used as evidentiary admissions of a party opponent to support the Briggs' motion. Alaska R.Evid. 801(d)(2).

share in the 1990 season. Thus when he was working on nets, buoys, motors, etc. he was doing the work of a fisherman. AS 23.30.230 exempts fishermen from the requirements of the workers compensation act. The affidavits of Roger Briggs, Emorene Briggs and Ryan Connor all illustrate conclusively that Scott was working as a fisherman at the time of the accident.

Roger Briggs' affidavit supports the inference that Scott had only one job:

5. Moving buoys at a set net site is a part of a fisherman's work.

6. The only employment Scott had with my wife and I was as a fisherman working on shares at the Ugashik setnet site.

7. In 1990 Scott was paid his full fisherman's share even though he missed a week of work for medical treatment.

Emorene Briggs' affidavit supports the single job inference in even greater detail:

4. Scott fished the full red salmon season which is about June 10 to about July 20. He was paid his full fisherman's share for the season.

5. No other money was or could be due him.

6. Getting boats, nets, outboard motors, buoys and running lines ready and into the water is part of the work of a fisherman who works on shares. I have been commercial fishing for 32 years and this has always been true for a fisherman working on shares.

Further, and very strong, support of the single job inference is the fact that Scott was not paid by the hour, but by the season, based on a percentage of the value of the salmon caught at the Briggs' set net sites.

As noted, the Supreme Court of the United States in *Chandris* required that "the total circumstances of an individual's employment" be weighed to determine the substantiality of the worker's connection to a vessel or group of vessels. *Id.* at ——, 115 S.Ct. at 2190. In reaching this result the Court rejected a "snapshot" test of seaman status under which "only the situation as it exists at the instant of injury" would be inspected. *Id.* at ——, 115 S.Ct. at 2187. Similarly, the

Court rejected a "voyage" test under which a maritime worker who puts to sea automatically assumes seaman status. *Id.* Although it observed that a worker may not "oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured," *id.*, the Court recognized that a worker's seaman status might change when the worker's "basic assignment" changes. *Id.* at ——, 115 S.Ct. at 2191. The Court gave examples of basic assignment changes:

For example, we can imagine situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea. If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position.

—— U.S. at —— – ——, 115 S.Ct. at 2191–92.

These examples—transferring an employee from a shoreside headquarters job to a classic seaman's job, or transferring a classic seaman to a desk job in the company's office—do not resemble in any way the transition from preparing to fish (setting the fishing gear in the water) to fishing, which takes place in the course of a set net fisherman's ordinary activities over a season. Thus it seems difficult to make a case that Scott, when his activities changed from preparing to fish to fishing, assumed a "new position," or underwent a "basic assignment" change within the meaning of *Chandris*.

If the law were to treat the transition from preparing to fish to fishing for a set net crewmember as a basic assignment change,

only the period during which fishing activities take place would be measured for purposes of the thirty percent guideline. This could have a distorting impact. A set netter injured between the time that actual fishing begins and when it ends might satisfy the thirty percent guideline, whereas if the whole period of the set netter's season, involving preparation, fishing, and taking the gear out of the water and storing it, were measured, the guideline might not be met.

I think it would be appropriate to rule, based on the fact that Scott's functions over the course of the season were those which were anticipated when he was initially hired as a fisherman, that there was no basic assignment change in the sense contemplated by *Chandris* which would justify measuring his vessel-related activity over less than the full season he worked. Out of deference to my colleagues in the majority, and based on the two job inferences which can be drawn from Scott's affidavit, it might also be reasonable to remand for a determination by the jury as to whether as a matter of fact a basic assignment change occurred. However, to rule that as a matter of law a basic assignment change took place seems distinctly wrong in view of the Briggs' affidavits and admissions of their counsel concerning the nature of a set net fisherman's activity, the wide divergence between the examples given by *Chandris* of a basic assignment change and the transition between preparation for fishing and fishing which occurred here, and the potential for distorting a set net fisherman's seaman status when it is measured simply by the period during the season when actual fishing is taking place.

### The Expectant Seaman Rationale

The expectant seaman rationale employed by the majority opinion is based on *Desper v. Starved Rock Ferry Co.*, 342 U.S. 187, 72 S.Ct. 216, 96 L.Ed. 205 (1952). Desper was a seasonal employee. During the summer he would operate one of his employer's small tour boats. He was killed before the tourist season began while painting life preservers for use on the boats. *Id.* at 188–89, 72 S.Ct. at 217. The Court held that Desper was not a seaman for Jones Act purposes, stating:

The many cases turning upon the question whether an individual was a "seaman" demonstrate that the matter depends largely on the facts of the particular case and the activity in which he was engaged at the time of injury. The facts in this case are unique. The work in which the decedent was engaged at the time of his death quite clearly was not that usually done by a "seaman." The boats were not afloat and had neither captain nor crew. They were undergoing seasonal repairs, the work being of the kind that, in the case of larger vessels, would customarily be done by exclusively shore-based personnel. For a number of reasons the ships might not be launched, or he might not operate one. To be sure, he was a probable navigator in the near future, but the law does not cover probable or expectant seamen but seamen in being. It is our conclusion that while engaged in such seasonal repair work Desper was not a "seaman" within the purview of the Jones Act. The distinct nature of the work is emphasized by the fact that there was no vessel engaged in navigation at the time of the decedent's death. All had been "laid up for the winter." (Citations omitted.) In the words of the court in *Antus v. Interocean S.S. Co.*, 108 F.2d 185, 187 [ (C.A. 6th Cir.) ], where it was held that one who had been a member of a ship's crew and was injured while preparing it for winter quarters could not maintain a Jones Act suit for his injuries: "The fact that he had been, or expected in the future to be, a seaman does not render maritime work which was not maritime in its nature."

342 U.S. at 190, 191, 72 S.Ct. at 218, 218.

*Desper* was not overruled by the Supreme Court in *Chandris* although some of its language was questioned. *Id.* at ——, 115 S.Ct. at 2187. Thus it may be correct to read *Desper*, as the majority does, as holding that the point in time when a claimed seaman starts to work on a vessel in navigation marks the beginning of the period in which the claimed seaman's status is to be measured. Until then perhaps the employee is merely a probable or expectant seaman.

If *Desper* applies and requires that before seaman status can be established the employee must have begun work on a vessel in navigation, the record must be examined to see whether Scott had done any work aboard the Briggs' skiffs before he was injured. The parties did not address this point and the record is completely silent concerning it. The burden was on the Briggs, as movants, to demonstrate the absence of genuine issues of material fact in order to be entitled to summary judgment. It was thus their obligation to establish that as of the time of the accident Scott had not done any work aboard their skiffs. Since the record does not demonstrate this, summary judgment must be reversed.

The majority opinion's response to the point concerning Scott's service aboard a vessel before he was injured is interesting. It states that there is evidence that Scott did not work aboard the vessels before his injury. Op. at 348 n. 9. In support of this, Emorene Briggs' first affidavit is cited. This affidavit states in relevant part:

1. My husband and I are commercial fishermen and have fished our set net sites on the Ugashik River for over twenty years.

2. In 1990 and 1991 we employed Bruce Scott who fished on shore at these sites. He was not salaried, he fished on shares....

The majority interprets Mrs. Briggs's statement that Scott fished on shore as equivalent to sworn testimony that Scott did no work aboard the Briggs' skiffs. There clearly is no such equivalency.

Mrs. Briggs in her second affidavit stated that the Briggs "have several skiffs we use to set out and pick up the set nets." She stated that Scott was employed as a fisherman and that "getting boats, nets, outboard motors, buoys and running lines ready and into the water is part of the work of a fisherman...." In order to interpret Mrs. Briggs statement that Scott fished on shore as meaning that he did not work aboard the Briggs' skiffs one must accept a division of labor among the fishermen working for the Briggs in which certain fishermen operate and work aboard their skiffs and others do not, and that Scott was among those who did not. Such an assumption for a family owned set net operation defies credulity.

Further, the inference that Mrs. Briggs' statement that "Scott fished on shore" means that he did not work aboard skiffs is contradicted in the Briggs' brief. The Briggs state that Scott "used skiffs to service the set nets from time to time."

Finally, if it is reasonable to infer from Mrs. Briggs' "fished on shore" statement that she meant that Scott did no work aboard their skiffs, and therefore did no work aboard their skiffs prior to the time he was injured, such an inference can nonetheless not be used to support the summary judgment unless it is a necessary inference. This is so because in adjudicating summary judgments all reasonable inferences must be drawn in favor of the nonmoving party and against the movant. Such an inference is hardly necessary since it would be reasonable to conclude that Mrs. Briggs in making the "fished on shore" statement did not intend to imply that Scott never worked aboard the skiffs. Rather than drawing a reasonable inference in favor of the nonmoving party, as required by our case law concerning summary judgments, the majority has, in my view, done the opposite and drawn an unreasonable inference in favor of the movants.

*Conclusion*

The record in this case is sparse with respect to the facts which are relevant to Scott's Jones Act claim. This case was presented to the superior court before the United States Supreme Court's *Chandris* published. Thus neither the parties nor the superior court had the benefit of the focusing effect which *Chandris* had on a large, confusing, and in some cases conflicting body of Jones Act case law. It is therefore not a complete surprise that the facts relevant to a determination of Scott's claimed seaman status were not addressed.

There are unresolved genuine issues of material fact. The essential question is whether Scott had a connection to an identifiable group of vessels in navigation which was

substantial in terms of both its duration and nature. A question subsidiary to this relates to the thirty percent guideline: How much time during the course of Scott's work as a set net fisherman for the Briggs, expressed as a percentage, did Scott spend working aboard, or in service of, their skiffs? Further, since the majority is not inclined to rule as a matter of law that Scott's employment as a fisherman was unitary, was there a basic assignment change justifying excluding Scott's pre-salmon catching activity as work as a seaman? Finally, to address the expectant seaman rationale, as of the time of his injury had Scott begun to serve aboard any of the Briggs' skiffs?

For the above reasons I would reverse the summary judgment pertaining to Scott's Jones Act claim and remand the claim to the trial court for resolution along with Scott's general negligence claims.